## 76391. AUTO-OWNERS INSURANCE COMPANY v. BARNES.
## 76392. BARNES v. AUTO-OWNERS INSURANCE COMPANY et al.
## 76393. CALDWELL & LANGFORD INSURANCE AGENCY, INC. v. BARNES.
(373 SE2d 217)

SOGNIER, Judge.

James Barnes, the sole proprietor of a tire service and garage, brought suit against his insurance carrier, Auto-Owners Insurance

Company (A-O), Caldwell & Langford Insurance Agency (C & L), an independent insurance agency, and Robert C. Doughty, a licensed insurance agent and officer of C & L, seeking payment for the loss of property of others which had been in Barnes' garage when the premises were destroyed by fire, as well as bad faith penalties and attorney fees against the insurer for failing to pay the claim. The trial court directed a verdict in favor of Doughty, and he is not involved in this appeal. A verdict was also directed in favor of A-O as to Barnes' claim under the liability portion of the policy. The jury returned a verdict in favor of Barnes against A-O but not C & L, and awarded penalties and attorney fees. All three parties appeal.

The record reveals that the policy contained a section providing coverage for property damage, as well as one providing liability coverage. In addition to the building and personal property belonging to Barnes, a substantial amount of property belonging to others which Barnes was holding on consignment, as well as tools and equipment belonging to family member employees of Barnes, were destroyed in the fire. Barnes sought payment from A-O under the policy for the loss of his own property, as well as reimbursement for sums he had paid the owners of the consigned property and the tools. While promptly paying Barnes' claim for the building and his own personalty up to the policy limits, A-O paid only $2,000 of Barnes' claim for the personal property belonging to others.

1. In Case No. 76391, A-O contends the trial court erred by denying its motion for a directed verdict as to coverage under the property insurance portion of the policy. A-O argues that under specific policy provisions it was obligated to pay Barnes only $2,000 for property belonging to others which was lost or damaged in the fire.

The declarations portion of the policy provides that "[t]his insurance shall cover for the account of the owner(s) (other than the named insured) personal property belonging to others in the care, custody or control of the insured. . . ." However, later specific provisions clearly provide property insurance coverage only "up to 2% of the limit of liability specified for Personal Property of the Insured at such location, but not exceeding $2,000, as an additional amount of insurance, to cover . . . direct loss by a peril insured against to personal property, similar to that covered by this policy, belonging to others while in the care, custody or control of the named insured," and state that "[a]s respects personal property belonging to others, this provision shall replace any loss payable provision of this policy."

We reject Barnes' argument that the general statement in the declarations controls, as such a construction contradicts explicit language to the contrary later in the policy. " 'An insurance policy must be construed as a whole [cit.], and "all of the provisions should be so interpreted so as to harmonize one with the other." [Cit.]' [Cit.]" *Wil-*

*son v. Southern Gen. Ins. Co.*, 180 Ga. App. 589, 590 (349 SE2d 544) (1986). Rather we find the language in the declarations to be merely a general statement as to the type of property covered by the policy, the terms of coverage for which are set out specifically later in the policy. " 'Insurance is a matter of contract and rules governing construction of contracts are applicable to insurance contracts. [Cit.]' [Cit.]" Id. It is well established that "[u]nder the rules of contract construction, a limited or specific provision will prevail over one that is more broadly inclusive. [Cit.]" *Griffin v. Barrett*, 155 Ga. App. 509, 510 (271 SE2d 647) (1980). The specific terms in this policy limit the coverage provided for property belonging to others.

Although the provisions of an insurance policy "will be construed against the insurer when a part is susceptible of two constructions and a court will adopt that interpretation which is most favorable to the insured . . . [,] if the language is unambiguous and but one reasonable construction is possible, the court will enforce the contract as written. [Cit.] Interpretation of policy provisions which are plain and definite is a matter of law for the trial court, and a policy provision ' "is not ambiguous even though presenting a question of construction, unless and until an application of the pertinent rules of construction leaves it uncertain as to which of two or more possible meanings represents the true intention of the parties." ' [Cit.]" *Simmons v. Select Ins. Co.*, 183 Ga. App. 128, 130 (358 SE2d 288) (1987). We agree with A-O that the foregoing provisions are clear and unambiguous in limiting coverage for personal property owned by persons other than the named insured to a maximum of $2,000. Accordingly, A-O was entitled to judgment as a matter of law and the trial court erred by denying its motion for a directed verdict as to the issue of coverage under the property insurance portion of the policy.

2. A-O also contends in Case No. 76391 that the award of penalties and attorney fees against it was improper. The award of penalties and attorney fees was based on A-O's refusal to pay more than $2,000. Since "[t]he Supreme Court has held that '[an award of statutory penalties and attorney fees] is not authorized if an insurer had reasonable and probable cause for making a defense to the claim,' [cits.]," *Commercial Union Ins. Co. v. F. R. P. Co.*, 172 Ga. App. 244, 250 (4) (322 SE2d 915) (1984), and we have held in Division 1, supra, that A-O was correct in withholding payment of more than $2,000, under the facts of the instant case we find that neither the statutory penalty nor attorney fees were authorized as a matter of law, id., and the judgment awarding them is consequently reversed.

3. In Case No. 76392, Barnes first asserts the loss of property belonging to others met the requirements for coverage under the liability portion of the policy, and the trial court erred by directing a verdict against him as to this issue. We do not agree.

The liability portion of the policy obligated A-O to pay Barnes' claim insofar as the property of others was concerned only to the extent that (a) Barnes' liability was imposed upon him by law, or (b) Barnes assumed liability for damages under a contract as defined by the policy. The policy expressly prohibited Barnes from voluntarily making any payment or assuming any obligation for any expense other than immediate medical relief and further provided that A-O was not subject to suit by Barnes unless he fully complied with all of the terms of the policy and "until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant, and the Company."

We find that the claim here meets none of the requirements for coverage under the liability portion of the policy. No evidence was presented that there had been a final legal determination of Barnes' liability to the owners of the destroyed or damaged property, nor did Barnes demonstrate that any liability could be imposed by law against him in favor of the owners of the property. While it is uncontroverted that Barnes paid the claims made upon him by the owners of the destroyed property, it is undisputed that the claims were neither reduced to judgment nor agreed to by the insurance carrier. Thus, Barnes' payment of those claims must be classified, for purposes of the insurance policy, as voluntary payments. As to the contractual assumption of liability provision, Barnes does not contend the agreements he had with the owners of the consigned property fit into five of the six categories of contract, as defined by the policy, the assumption of which would meet the requirements for liability coverage. Rather, Barnes ingeniously asserts that because the sixth category, "sidetrack agreements," was not explained in the policy, it was ambiguous, creating a question of fact and allowing the jury to decide whether Barnes' agreements were "sidetrack agreements" so as to provide liability coverage. However, "[w]ords generally bear their usual and common signification." OCGA § 13-2-2 (2). We agree with the trial court that the term "sidetrack agreements," although not fully explained, clearly refers to railroads, and in its ordinary meaning does not contemplate the agreements made by Barnes. Since Barnes' claim did not meet the requirements for coverage under the liability portion of the policy, a verdict in favor of A-O was demanded as to this issue, and the trial court did not err by granting A-O's motion for a directed verdict as to this issue.

4. The case was submitted to the jury by special verdict, by which they were authorized to consider C & L's liability to Barnes only if they found A-O was not liable to Barnes on the issue of coverage. Because the jury determined A-O *was* liable to Barnes on the issue of coverage, they did not reach the question of C & L's liability.

In his second enumeration of error in Case No. 76392, Barnes appears to maintain that if this court determines that A-O had no liability to him because the policy provided no further coverage, then C & L's liability must be reexamined.

We agree that the issue of C & L's liability must be reviewed, and turn to that issue. C & L's liability, as alleged by Barnes, arises from its negligent procurement of insurance which did not provide the coverage desired and sought by Barnes. However, "the general rule [is] that an insured has a duty to examine and reject a policy providing incorrect or insufficient coverage . . . ." *King v. Brasington*, 252 Ga. 109-110 (312 SE2d 111) (1984). Here, as in *Epps v. Nicholson*, 187 Ga. App. 246 (370 SE2d 13) (1988), there are no circumstances which operated to create an exception to the general rule that the burden is on the insured to examine the policy issued and determine whether the coverage desired by the insured is provided. The insured's failure to carry this burden does not create a cause of action against the agency which procured the insurance. *Ethridge v. Assoc. Mutuals*, 160 Ga. App. 687, 690 (288 SE2d 58) (1981). Accord *McCullohs Svc. Station v. Wilkes*, 183 Ga. App. 687, 690 (1) (359 SE2d 745) (1987); *Blalock v. Southern Ins. Co.*, 180 Ga. App. 319, 320 (349 SE2d 32) (1986). Accordingly, the judgment in C & L's favor is correct, albeit for the wrong reason. It is well established that "[a]n appellate court in reviewing a lower court decision will affirm a judgment which is right for any reason. [Cit.]" *Smith v. Fleming*, 183 Ga. App. 342, 343 (1) (358 SE2d 900) (1987).

5. It is unnecessary for us to address further the contentions put forth by C & L in Case No. 76393, as our decision in Division 4 of this opinion requires that we affirm the judgment in favor of C & L.

*Judgment affirmed in Case Nos. 76392 and 76393. Judgment reversed in Case No. 76391. Deen, P. J., and Carley, J., concur.*

DECIDED SEPTEMBER 6, 1988 —
REHEARING DENIED SEPTEMBER 20, 1988

*William C. Sanders*, for Auto-Owners
*Russell M. Guttshall III*, for Barnes.
*Mark A. Gonnerman, Dawn G. Benson*, for Caldwell & Langford.