A02A1982. CAPITOL INDEMNITY, INC. v. BROWN et al.

(581 SE2d 339)

RUFFIN, Presiding Judge.

On February 14, 1999, Derrick Whiting shot James Brown, Jr. in the chest at a sports bar known as Jin's Grill. Brown sued West Atlanta Investigations & Security, Inc. ("West Atlanta"), the firm that provided security at the bar, alleging that West Atlanta's negligent hiring, retention, training, and supervision of security guards, as well as its negligent provision of security services, proximately caused his injuries.[1] The complaint sought both compensatory and punitive damages.

Capitol Indemnity, West Atlanta's general liability insurance carrier, subsequently filed this declaratory judgment action, asserting that its insurance policy does not cover Brown's claims. Following discovery, Capitol moved for summary judgment. The trial court denied Capitol's motion, but issued a certificate of immediate review. We granted Capitol's application for interlocutory appeal, and this appeal ensued. For reasons that follow, we reverse.

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

---

[1] Brown also sued Whiting, various property owners, and the security guard on duty when the shooting occurred.

any material fact and that the moving party is entitled to a judgment as a matter of law."[2] The facts in this case are largely undisputed.

On the date of the shooting, West Atlanta was insured through a general liability insurance policy issued by Capitol. That policy, referred to as a "Commercial General Liability Coverage Part," consists of numerous forms. The 13-page "Commercial General Liability Coverage Form" outlines the basic coverage, exclusions, conditions, and definitions. The policy also has other forms and endorsements that, as stated in the schedule listing them, are "applicable to all premises and coverages" under the Commercial General Liability Coverage Part. The list includes: "EXCLUSION — ASSAULT OR BATTERY," "EXCLUSION — PUNITIVE OR STATUTORY DAMAGES," and an endorsement for "DETECTIVE AGENCY OR SECURITY GUARD ERRORS AND OMISSIONS/PROFESSIONAL LIABILITY COVERAGE" ("the E&O endorsement"). These two exclusions and the E&O endorsement are the focus of this dispute.

The assault or battery exclusion cautions that it changes the policy terms for the Commercial General Liability Coverage Part. Pursuant to the exclusion:

> [Capitol has] no duty to defend or indemnify any insured or any other person against any claim or suit for bodily injury, property damage, personal injury or advertising injury, including claims or suits for negligence[,][3] arising out of or related to any: 1. Assault; 2. Battery; 3. Harmful or offensive contact; or 4. Threat. . . . For purposes of this exclusion, negligence includes but is not limited to claims for negligent: 1. Hiring; 2. Employment; 3. Training; 4. Supervision; or 5. Retention.[4]

The punitive damages exclusion similarly warns that it changes the Commercial General Liability Coverage Part and explicitly exempts from coverage punitive, exemplary, and statutory damages. As stated in the exclusion, "[t]his policy covers only compensatory damages."[5]

The E&O endorsement, which provides detective agency/security

---

[2] OCGA § 9-11-56 (c).

[3] We insert this comma for readability. The parties do not claim that the absence of this comma creates any ambiguity in the provision or affects coverage.

[4] (Emphasis omitted.)

[5] The policy contains two editions of the punitive damages exclusion, a 1993 version and a 1998 version. Both specifically exclude from coverage punitive damages, exemplary damages, and statutory damages, such as multiple damages, costs, expenses, or attorney fees. This quote is from the 1998 version.

guard professional liability coverage, modifies the Commercial General Liability Coverage Part. The endorsement states:

> The insurance provided under this policy shall apply to sums which any insured shall become legally obligated to pay as damages arising out of the rendering or failing to render professional services during the policy period in the conduct of the named insured detective agency or security guard operations.

The parties do not dispute that Whiting assaulted Brown, and the record shows that Whiting pled guilty to aggravated assault on July 7, 1999. Citing that fact, as well as the exclusions for assault or battery and punitive damages, Capitol moved for summary judgment. Brown and West Atlanta opposed the motion, arguing below, as they argue on appeal, that the assault or battery exclusion only applies to conduct by West Atlanta employees and that the E&O endorsement specifically covers Brown's claims. The trial court denied Capitol's motion.

1. We first consider whether the assault or battery exclusion applies to assaults by individuals other than West Atlanta employees. In construing West Atlanta's insurance policy, we are governed by the ordinary rules of contract interpretation.[6] Although we must look for the parties' intent, we cannot search for such intent outside the terms of a clear and unambiguous contract.[7] Furthermore,

> [w]hen the language of an insurance policy defining the extent of the insurer's liability is unambiguous and capable of but one reasonable construction, the courts must expound the contract as made by the parties. Courts have no more right by strained construction to make an insurance policy more beneficial by extending the coverage contracted for than they would have to increase the amount of coverage.[8]

By its clear terms, the assault or battery exclusion applies to *any* claim or suit for bodily injury arising out of or related to an assault. The policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." In his complaint, Brown sought recovery for damages relating to bodily injuries he sustained in the shooting. But for the assault, Brown would not have a cause of action, since the inju-

---

[6] See *Capitol Indem. Corp. v. L. Carter Post 4472 Veterans &c.*, 225 Ga. App. 354, 355 (484 SE2d 52) (1997).

[7] See id.

[8] (Punctuation and emphasis omitted.) Id.

ries would never have occurred. His claims thus fall directly within the exclusion.[9]

On appeal, West Atlanta argues that because the exclusion refers to negligent employment practices, the parties intended that it apply only to assaults by West Atlanta employees. We disagree. As noted above, the exclusion specifically encompasses *any* claim arising out of an assault or battery. Although the exclusion clearly applies to an assault by a negligently employed security guard, nothing in the provision limits it to such assaults or exempts third-party assaults from its reach. And, as shown by Brown's complaint, a third-party assault can form the basis of a negligent employment claim against West Atlanta. Under these circumstances, we cannot accept West Atlanta's extremely narrow interpretation of the exclusion.[10]

2. Brown and West Atlanta further argue that, even if the assault or battery exclusion applies, the exclusion conflicts with the E&O endorsement, rendering the insurance policy ambiguous and creating a jury question.[11] Again, we disagree.

"[A]n insurance policy must be construed as a whole, and all of the provisions should be . . . interpreted so as to harmonize one with the other."[12] Read as a whole, the Commercial General Liability Coverage Part establishes broad liability coverage. The E&O endorsement modifies and extends that coverage to include professional liability claims arising out of West Atlanta's security guard operations. The policy then limits its broad coverage through various exclusions, which carve finite classes of claims out of the contract. One of those exclusions relates to assault and battery. The E&O endorsement does not exempt the professional liability coverage from this or any other exclusion. Moreover, the policy states in the form schedule that the assault or battery exclusion applies to *all* coverages under the Commercial General Liability Coverage Part.[13]

Simply put, there is no conflict between the contract terms. The

---

[9] See *Jefferson Ins. Co. &c. v. Dunn*, 269 Ga. 213, 216 (496 SE2d 696) (1998); *Eady v. Capitol Indem. Corp.*, 232 Ga. App. 711, 714 (502 SE2d 514) (1998).

[10] See *L. Carter Post 4472*, supra.

[11] See *Travelers Ins. Co. v. Blakey*, 180 Ga. App. 520 (349 SE2d 474) (1986) (if, after applying the rules of contract construction, the trial court determines that the contract terms are still ambiguous, the jury must resolve the ambiguity).

[12] (Punctuation omitted.) *Chanin v. Tharrington*, 222 Ga. App. 890 (476 SE2d 651) (1996).

[13] The dissent contends that this provision in the form schedule conflicts with the assault or battery exclusion, the punitive damages exclusion, and the E&O endorsement. We do not see a conflict. The assault or battery and punitive damages exclusions state that they modify the Commercial General Liability Coverage Part, which is entirely consistent with the provision in the form schedule. Furthermore, as noted above, the E&O endorsement does exempt itself from the exclusions applicable to the Commercial General Liability Coverage Part.

assault or battery exclusion limits the Commercial General Liability Coverage Part, which *includes* the E&O coverage. And, although the E&O endorsement establishes coverage for professional liability, it is subject to the same exclusions as other coverage in the Commercial General Liability Coverage Part. To conclude otherwise violates the rules of contract construction and finds ambiguity where there is none.[14]

The dissent argues that the assault or battery exclusion does not apply to the E&O endorsement, apparently because the exclusion explicitly changes the terms of the Commercial General Liability Coverage Part, but makes no similar statement regarding the E&O endorsement. That endorsement, however, is *part* of the Commercial General Liability Coverage Part. It does not create a new policy of insurance — it extends the Commercial General Liability Coverage Part to professional liability claims. In other words, the E&O endorsement does not stand alone. It must be read with the other provisions that, as a whole, make up the Commercial General Liability Coverage Part.

Finally, the assault or battery exclusion does not render the E&O endorsement worthless or "effectively preclude all coverage for nearly any conceivable event," as Brown claims. The exclusion relates to a finite class of claims involving assault or battery. Although the dissent asserts otherwise, the range of professional liability claims that might be brought against a security firm certainly extends beyond this class.

By its clear terms, the assault or battery provision excludes Brown's claims from coverage. The policy also provides no coverage for his punitive damage claims, which are specifically excluded from the Commercial General Liability Coverage Part.[15] As noted by our Supreme Court, unambiguous policy exclusions "must be given effect, even if 'beneficial to the insurer and detrimental to the insured.' "[16] Accordingly, the trial court erred in denying Capitol's motion for summary judgment.[17]

*Judgment reversed. Andrews, P. J., Johnson, P. J., and Adams, J., concur. Barnes, Phipps and Mikell, JJ., concur in part and dissent in part.*

---

[14] See *Chanin*, supra; *Auto-Owners Ins. Co. v. Barnes*, 188 Ga. App. 439, 440-441 (1) (373 SE2d 217) (1988).

[15] See *Southern v. Sphere-Drake Ins. Co.*, 226 Ga. App. 450, 452 (486 SE2d 674) (1997); *Ga. Baptist Children's Homes &c. v. Essex Ins. Co.*, 207 Ga. App. 346, 350 (3) (427 SE2d 798) (1993).

[16] *Jefferson Ins.*, supra.

[17] See *Chanin*, supra at 891; *Auto-Owners*, supra.

BARNES, Judge, concurring in part and dissenting in part.

Because I cannot agree that the Assault and Battery and Punitive Damage Exclusions upon which Capitol relies apply to the Errors and Omissions/Professional Liability Coverage Endorsement ("E & O Coverage"), I must respectfully dissent. Although I concur in the majority's holding that the Assault and Battery Exclusion is sufficient to exclude coverage for Brown's damages under the Commercial General Liability Coverage Part and that the exclusion extends to assaults by individuals other than West Atlanta employees, extending the Assault and Battery Exclusion and the Punitive Damages Exclusion to the E & O Coverage is not consistent with the policy or with our law.

I acknowledge that the Commercial General Liability Coverage Part Form Schedule says: "Forms and Endorsements applying to this Coverage Part and made a part of this policy at time of issue: FORMS APPLICABLE TO ALL PREMISES AND COVERAGES," but this general provision conflicts with the terms of specific provisions of the Assault and Battery Exclusion, the Punitive Damages Exclusion, and the E & O Coverage endorsement. The Assault and Battery Exclusion and the Punitive Damages Exclusion both specifically provide that:

This form changes the policy terms as follows:
COMMERCIAL GENERAL LIABILITY COVERAGE PART.[18]

Thus by their terms, these exclusions do not apply to the E & O Coverage. Further, the E & O Coverage endorsement by its specific terms states that it modifies insurance provided under the Commercial General Liability Coverage Part.[19] As under our general rules of contract construction, limited or specific provisions of a contract prevail over a more broadly inclusive provision, *Swisshelm v. Dept. of Human Resources*, 253 Ga. App. 816, 817 (560 SE2d 722) (2002); *Holtzclaw v. City of Dalton*, 189 Ga. App. 650, 652 (377 SE2d 196) (1988), the general provision on the form schedule is not sufficient to include these endorsements.

Thus, while I agree with the majority that the E & O Coverage endorsement modifies the Commercial General Liability Coverage Part, I cannot agree that the Assault and Battery and Punitive Damages Exclusions apply to the E & O Coverage endorsement. If Capitol wanted the Assault and Battery and Punitive Damages Exclusions to

---

[18] The Assault and Battery Exclusion also states that it applies to the Products/Completed Operations Coverage Part, but that coverage is not relevant to this case.

[19] This endorsement also states that it applies to the Products/Completed Operations Coverage Part.

apply to the E & O Coverage endorsement, it could have easily done so. Because "if an insurance contract is capable of being construed two ways, it will be construed against the insurance company and in favor of the insured," *Claussen v. Aetna Cas. &c. Co.*, 259 Ga. 333, 334-335 (1) (380 SE2d 686) (1989), we must give Brown and West Atlanta the benefit of any inconsistency between these provisions. At the very least, these provisions are ambiguous: A word or phrase is ambiguous when " 'it is of uncertain meaning and may be fairly understood in more ways that one.' " *Kusuma v. Metametrix, Inc.*, 191 Ga. App. 255, 256 (2) (381 SE2d 322) (1989). The majority's effort to "harmonize" these inconsistent provisions deprives Brown and West Atlanta of the benefit of this longstanding rule of contract construction.

Moreover, I cannot agree with the majority's conclusion that the Assault and Battery Exclusion does not render the E & O Coverage worthless. What would be the benefit of the E & O Coverage endorsement if the majority is correct? I see none.

The nature of the security business, particularly in a sports bar, is such that by its very nature dealing with confrontations must be expected, and confrontations that result in assaults or batteries are part and parcel of the business. Further, the incident in this case falls squarely within the scope of the endorsement: "damages arising out of the rendering or failing to render professional services during the policy period in the conduct of the named insured detective or security guard operations."

If this incident is not exactly what is contemplated by the E & O Coverage, then what is covered? Are we to believe that West Atlanta procured this coverage to protect them in lawsuits from patrons who were denied admission to the sports bar?

As the construction given these exclusions by the majority, in effect, vitiates the E & O Coverage endorsement, it violates the principles of contract construction that "[t]he construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part," OCGA § 13-2-2 (4), and that courts "should avoid an interpretation of a contract which renders portions of the language of the contract meaningless." *Bd. of Regents &c. of Ga. v. A. B. & E., Inc.*, 182 Ga. App. 671, 675 (357 SE2d 100) (1987).

Accordingly, I must respectfully dissent in part.

I am authorized to state that Judge Phipps and Judge Mikell join in this opinion.

DECIDED MARCH 27, 2003 —
RECONSIDERATION DENIED APRIL 14, 2003 —

Swift, Currie, McGhee & Hiers, Lynn M. Roberson, John S. Berry, for appellant.

Millar & Mixon, Bruce R. Millar, Hawkins & Parnell, William H. Major, Goodman, McGuffey, Aust & Lindsey, Edward H. Lindsey, Jr., Temple, Strickland, Counts & Dinges, William D. Strickland, Jack F. Witcher, James B. Sullivan, Donald J. Sharp, for appellees.