OPINION
{¶ 1} Veneta J. Colter, administratrix of the estate of Eric Colter, appeals from the trial court's entry of summary judgment in favor of appellee Capitol Indemnity Corporation in a declaratory judgment action involving an insurance-coverage dispute.
 {¶ 2} The present appeal stems from an altercation at an adult-entertainment establishment known as Spanky's Doll House ("Spanky's"). The incident resulted in Eric Colter being shot to death by another patron. Following the shooting, Veneta Colter filed suit, asserting various liquor-law violations and negligence-based claims against Spanky's and its employees. The trial court subsequently entered summary judgment in favor of Spanky's and its employees on the liquor-law claims, but found genuine issues of material fact on the negligence-based causes of action.
 {¶ 3} While the foregoing action was pending, Capitol Indemnity Corporation ("Capitol"), a general liability insurer for Spanky's, filed a declaratory judgment action concerning insurance-coverage issues. Before the trial court ruled on the declaratory judgment action, Colter entered into a settlement agreement with the Spanky's defendants. Under the agreement, the Spanky's defendants confessed judgment to Colter in the amount of $1.5 million. In return, Colter agreed not to enforce the judgment against the Spanky's defendants, who assigned their rights under the Capitol policy to Colter. The trial court later entered summary judgment for Capitol on its declaratory judgment action, holding that Colter's claims against the Spanky's defendants were excluded from coverage under the terms of the Capitol policy. This timely appeal by Colter followed.
 {¶ 4} In her sole assignment of error, Colter contends the trial court erred in entering summary judgment in favor of Capitol on its declaratory judgment action. In support, she argues (1) that an assault-or-battery policy exclusion is ambiguous, (2) that her entry into the settlement agreement with Spanky's did not violate a cooperation clause in the policy, and (3) that Capitol's failure to provide coverage for her claims violates public policy.
 {¶ 5} Colter's first argument concerns insurance coverage and exclusion language in the Capitol policy issued to Spanky's. The general liability coverage language provides:
 {¶ 6} "We will pay those sums that the insured becomes legally obligated to pay as damages because of `bodily injury' or `property damage' to which this insurance applies. We will have the right and duty to defend the insured against any `suit' seeking those damages. However, we will have no duty to defend the insured against any `suit' seeking damages for `bodily injury' or `property damage' to which this insurance does not apply."
 {¶ 7} Following the coverage language are various policy exclusions. On appeal, Colter cites exclusions for "expected or intended injury" and for "assault or battery." The exclusion for expected or intended injury states:
 {¶ 8} "This insurance does not apply to:
 {¶ 9} "a. Expected or Intended Injury
 {¶ 10} "`Bodily injury' * * * expected or intended from the standpoint of the insured. This exclusion does not apply to `bodily injury' resulting from the use of reasonable force to protect persons or property."
 {¶ 11} Finally, the exclusion for assault or battery provides:
 {¶ 12} "EXCLUSION — ASSAULT OR BATTERY
 {¶ 13} "* * *
 {¶ 14} "We have no duty to defend or indemnify any insured or any other person against any claim or suit for bodilyinjury, property damage, personal injury or advertisinginjury, including claims or suits for negligence arising out of or related to any:
 {¶ 15} "1. Assault;
 {¶ 16} "2. Battery;
 {¶ 17} "3. Harmful or offensive contact; or
 {¶ 18} "4. Threat.
 {¶ 19} "This exclusion applies regardless of fault or intent. Coverage is also excluded for any injury or damage committed while using reasonable force or acting in self-defense.
 {¶ 20} "For purposes of this exclusion, negligence includes but is not limited to claims for negligent:
 {¶ 21} "1. Hiring;
 {¶ 22} "2. Employment;
 {¶ 23} "3. Training;
 {¶ 24} "4. Supervision; or
 {¶ 25} "5. Retention."
 {¶ 26} On appeal, Colter insists that when the coverage language is read in conjunction with the expected-or-intended-injury and assault-or-battery exclusions, ambiguity exists as to whether the policy provides coverage for assaults committed by third-party patrons as opposed to assaults committed by Spanky's employees. In response, Capitol contends the assault-or-battery exclusion unambiguously precludes coverage for Colter's negligence-based claims, all of which arise out of and are related to the shooting death of her son. As noted above, the trial court agreed with Capitol. After examining the expected-or-intended-injury and assault-or-battery exclusions, the trial court reasoned as follows:
 {¶ 27} "In reading these two provisions it is axiomatic that there is only one reasonable interpretation. While the first exclusion found in the main body of the insurance policy only excludes claims for bodily injury expected or intended by the insured the latter amendment clearly modifies the policy to exclude any claim arising out of any assault or battery. The amendment specifically notifies the insured that the form changes the policy. The Court finds that reasonable minds could only conclude that claims arising out of any assault or battery whether committed by the insured, an employee of the insured or a third party are excluded from coverage under the policy.
 {¶ 28} "It cannot be disputed that the unfortunate shooting death of Eric Colter was the result of an assault. Claims arising out of any assault or battery are excluded from coverage under the policy. Therefore, Capitol Indemnity has no duty to defend the insured against this claim."
 {¶ 29} Upon review, we agree with the trial court's interpretation of the insurance policy. "When confronted with an issue of contractual interpretation, the role of a court is to give effect to the intent of the parties to the agreement. * * * We examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy. * * * We look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy. * * * When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties." WestfieldIns. Co. v. Galatis, 100 Ohio St.3d 216, 2003-Ohio-5849, at ¶11. The Ohio Supreme Court also has stressed that while policy exclusions "will be interpreted as applying only to that which isclearly intended to be excluded * * * [,] the rule of strict construction does not permit a court to change the obvious intent of a provision just to impose coverage." Hybud Equip. Corp. v.Sphere Drake Ins. Co., Ltd. (1992), 64 Ohio St.3d 657, 665.
 {¶ 30} In the present case, Colter notes that the broad coverage language quoted above provides coverage for "bodily injury," which is what her son experienced. Colter then argues that the expected-or-intended-injury exclusion would not apply because the shooting of her son by a third-party nightclub patron was neither expected nor intended by Spanky's. Thus, reading just the coverage language and the expected-or-intended-injury exclusion, Colter asserts: "[I]t would be reasonable for the insured to expect that it would have coverage for an assault committed by a third person because such conduct is not expected or intended by the insured. Just considering the issue from the perspective of the expected or intended exclusion it is clear that the third party assault claim stemming from a third party assault would be covered under the policy."
 {¶ 31} We do not dispute Colter's reading of the policy's coverage language or the expected-or-intended-injury exclusion. The policy generally covers claims for "bodily injury," which her son undoubtedly suffered. Moreover, the expected-or-intended-injury exclusion appears to have no applicability because a fatal shooting by a nightclub patron is not conduct that Spanky's expected or intended. As Colter properly notes, however, the crucial issue before us is whether the assault-or-battery exclusion unambiguously precludes coverage.
 {¶ 32} Concerning the first portion of the assault-or-battery exclusion, Colter argues as follows:
 {¶ 33} "* * * [I]t is clear that the first section of the exclusion provides that only assault and battery are excluded under the policy. It does not clearly notify an insured that assaults are excluded no matter by whom they are committed. It does not clearly notify an insured that assaults committed by third persons are excluded. It does not in any way dispel an insured's reasonable expectation, engendered by the `expected or intended' exclusion, that he will be covered for an assault that is not expected or intended by the insured."
 {¶ 34} Upon review, we are unpersuaded by Colter's argument. Again, the first portion of the assault-or-battery exclusion states:
 {¶ 35} "We have no duty to defend or indemnify any insured or any other person against any claim or suit for bodily injury,property damage, personal injury or advertising injury,
including claims or suits for negligence arising out of or related to any:
 {¶ 36} "1. Assault;
 {¶ 37} "2. Battery;
 {¶ 38} "3. Harmful or offensive contact; or
 {¶ 39} "4. Threat."
 {¶ 40} This language negates Capitol's duty to defend or indemnify any claim or suit
 {¶ 41} for bodily injury, including claims or suits for negligence arising out of or related to any assault or battery. By its own terms, this provision unambiguously extends to all
claims arising out of or related to assault or battery, regardless of whether the misconduct is committed by a Spanky's employee or a third-party patron. The assault-or-battery exclusion does not, and in our view need not, draw a distinction between different types of people (i.e., employees, patrons, etc.) who may commit an assault or battery. Instead, its plain language precludes coverage for any bodily injury claim or suit arising out of or related to any assault or battery. We see no ambiguity in this language.
 {¶ 42} In opposition to our conclusion, Colter insists that an assault-or-battery exclusion is ambiguous unless it expressly states that it applies to assaults and batteries committed by third parties such as patrons who are not insureds. Absent such "qualifying" language, Colter argues that the assault-or-battery exclusion in the present case should be read as precluding coverage only for assaults or batteries committed or caused by Spanky's employees.
 {¶ 43} In support of her argument, Colter relies largely onLiquor Liab. Joint Underwriting Ass'n v. Hermitage Ins. Co.
(Mass. 1995), 644 N.E.2d 964. In that case, a bar patron assaulted and injured another patron. The injured party sued the bar for, inter alia, negligent failure to provide adequate security. The bar's insurer refused to defend the suit, relying on an assault-and-battery exclusion. The policy at issue inHermitage provided coverage for liability due to bodily injury "caused by an occurrence." The policy defined an "occurrence" as "an accident * * * which results in bodily injury or property damage neither expected nor intended from the point of view of the insured." An endorsement also provided that an "[a]ssault and/or battery shall not be deemed an accident" under the policy. At issue in Hermitage was whether the endorsement precluded the injured party's claim against the bar for negligent failure to provide adequate security. In resolving this issue, the Massachusetts Supreme Court primarily focused on whether the assault-and-battery endorsement excluded negligence claims related to an assault and battery or whether it applied only to claims involving intentional harm committed by or at the direction of the bar's employees or agents. In the end, the Massachusetts Supreme Court found the endorsement ambiguous and construed it against the insurance company. The Hermitage court reasoned that "[i]f [the insurer] had intended to preclude coverage to [the bar] for a claim based on an allegation of negligent failure to provide security, it could have done so `in clear and unmistakable language.'" Unlike the policy at issue inHermitage, however, the Capitol policy in the present case expressly excludes coverage for any negligence claim arising outof or related to any assault or battery. Thus, the ambiguity that existed in Hermitage about whether the policy precluded a negligence claim arising out of an assault or whether it precluded only claims involving intentional misconduct does not exist here.
 {¶ 44} Colter also insists that the present case is "on all fours" with Lock v. Oney's Pub (Nov. 8, 1996), Montgomery App. No. 15577. Having reviewed our decision in that case, we find it to be distinguishable. In Lock, a patron sued Oney's Pub for negligence after being assaulted by another customer. The pub's insurance policy contained an assault-and-battery exclusion. It provided that the insurance did not apply to bodily injury arising out of "the actual or threatened assault or battery or the failure to suppress or prevent such action by the insured or by anyone else for whom the insured is legally responsible * * *." Upon review, we found the exclusion ambiguous as to whether it applied only to acts committed by the pub's employees. We held that the exclusion reasonably could be read as not excluding coverage for assaults committed by non-employees. This was so because the exclusion applied to assaults "by the insured or by anyone else for whom the insured is legally responsible." Unlike Lock, however, the assault-or-battery exclusion in the Capitol policy contains no limiting language. As noted above, its plain language precludes coverage for any bodily injury claim or suit arising out of or related to any assault or battery. Therefore, Lock is distinguishable.
 {¶ 45} Colter also cites several out-of-state cases for the proposition that an assault-and-battery exclusion is ambiguous unless it specifically excludes assaults and batteries committed by third parties. See Gawrieh v. Scottsdale Ins. Co. (Ark.App. 2003), 117 S.W.3d 634; Lucy v. Harris (La.App. 1986),490 So.2d 416; American Fidelity Fire Ins. Co. v. Allstate Ins. Co.
(Va. 1971), 184 S.E.2d 11.[1] In addition, she cites Ohio cases that contain what she believes are unambiguous assault-and-battery exclusions. In Brogan v. Utica First Ins.Co. (Feb. 9, 1996), Montgomery App. No. 15407, for example, the policy contained an exclusion that read:
 {¶ 46} "Notwithstanding anything contained herein to the contrary, it is understood and agreed that this policy excludes any and all claims arising out of any assault, battery, fight, altercation, misconduct or any other similar incident or act of violence, whether caused by or at the instigation of, or at thedirection of the insured, his employees, customers, patrons,guests or any cause whatsoever * * *." (Emphasis added). Because the assault-or-battery exclusion in the Capitol policy simply precludes coverage for bodily injury arising out of or related toany assault — without specifically stating that the exclusion applies regardless of who commits the assault — Colter contends the exclusion is ambiguous, whereas the exclusion in Brogan was not.
 {¶ 47} Upon review, we are unpersuaded by Colter's argument that an assault-or-battery exclusion is ambiguous unless it specifically excludes from coverage assaults and batteries committed by third parties such as bar patrons. The exclusion in the Capitol policy unambiguously excludes coverage for any
bodily injury claim, including claims or suits for negligence, arising out of or related to any assault or battery. By its clear terms, this exclusion applies to all claims arising out of or related to an assault or battery. Thus, we see no purpose or benefit in requiring additional language stating that the exclusion applies regardless of whether the assault or battery is committed by an employee, a patron, or any other person. By excluding coverage for any bodily injury claim arising out of or related to any assault or battery, the Capitol policy already makes clear that it applies regardless of who commits the assault or battery. We find no ambiguity in need of clarification.
 {¶ 48} Although neither party has cited the case, we note that the Georgia Court of Appeals reached the same conclusion inCapitol Indemnity, Inc. v. Brown (Ga.App. 2003),581 S.E.2d 339. Like the present case, Brown involved a bar patron shooting another patron. The victim of the shooting sued the company that provided security, asserting various negligence-based claims. The security company was insured by Capitol under a general liability policy of insurance. The policy contained an assault-or-battery exclusion identical to the one Capitol included in Spanky's policy. As in the present case, the victim argued that the assault-or-battery exclusion only applied to the actions of the insured's employees and not to assaults or batteries committed by third-party bar patrons. In rejecting this argument and finding the policy to be unambiguous, the Georgia appellate court reasoned:
 {¶ 49} "By its clear terms, the assault or battery exclusion applies to any claim or suit for bodily injury arising out of or related to an assault. The policy defines `bodily injury' as `bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.' In his complaint, [the victim] sought recovery for damages relating to bodily injuries he sustained in the shooting. But for the assault, [the victim] would not have a cause of action, since the injuries would never have occurred. His claims thus fall within the exclusion." Id. at 342.
 {¶ 50} Our rejection of Colter's argument about the need for clarifying language in Capitol's assault-or-battery exclusion is further bolstered by the U.S. Sixth Circuit Court of Appeals recent ruling in Monticello Ins. Co. v. Hale (6th Cir. Nov. 10, 2004), App. No. 03-4277, 2004 WL 2567656. Hale involved the same underlying claims asserted by Colter against Spanky's as a result of her son's death. It arose as a declaratory judgment action brought by the Monticello Insurance Company, which also had issued a liability insurance policy to Spanky's. Like the present case, the issue in Hale was whether an assault-and-battery exclusion in the Monticello policy unambiguously precluded coverage for an assault committed by a patron as opposed to a Spanky's employee. Although Hale and the present case involve the same legal issue, Colter stresses that the Monticello policy's assault-and-battery exclusion contained somewhat different language.
 {¶ 51} The first part of the assault-and-battery exclusion inHale provided that no action to recover for bodily injury arising from assault, battery, or harmful contact between two or more persons was covered by the policy. A second part of the assault-and-battery exclusion specified that the foregoing broad exclusionary language applied regardless of whether the assault, battery, or harmful contact was committed by the insured, his officers, employees, agents, servants, or any other person. On appeal, Colter contends the assault-or-battery exclusion in the Capitol policy is ambiguous because it lacks similar language making clear that it applies even when a third-party commits the assault or battery.
 {¶ 52} We disagree. After reviewing the assault-and-battery exclusion in Hale, the Sixth Circuit concluded that the first portion of the exclusion, which is not unlike the language in the Capitol policy, unambiguously precluded coverage in any action to recover for bodily injury arising from assault, battery, or harmful contact between two or more persons.[2] Because the Capitol policy similarly precludes coverage for any bodily injury claim, including claims or suits for negligence, arising out of or related to any assault or battery, the Sixth Circuit's finding of no ambiguity supports our conclusion herein.
 {¶ 53} Our conclusion is not altered by the fact that a second portion of the exclusion in Hale specified that it applied regardless of who committed the assault or battery. Although the Capitol policy in the present case lacks similar language, the Sixth Circuit found such limiting language to be redundant at best. The Hale court noted that the first part of the assault-and-battery exclusion constituted a clear and comprehensive exclusion of assault-based claims to which the second part added nothing. At most, the Sixth Circuit observed, the second portion simply "amplified" what the first part already had made clear. This reasoning is consistent with our observation, supra, that we see no purpose or benefit in requiring additional language in the Capitol policy stating that the exclusion applies regardless of whether the assault or battery is committed by an employee, a patron, or any other person. By excluding coverage for any bodily injury claim arising out of or related to any assault or battery, the Capitol policy already makes clear that it applies regardless of who commits the assault or battery.
 {¶ 54} Colter next contends the assault-or-battery exclusion in the Capitol policy is ambiguous because it lists various types of negligence claims that are excluded from coverage and they all involve employees. The pertinent policy language states:
 {¶ 55} "For purposes of this exclusion, negligence includes but is not limited to claims for negligent:
 {¶ 56} "1. Hiring;
 {¶ 57} "2. Employment;
 {¶ 58} "3. Training;
 {¶ 59} "4. Supervision; or
 {¶ 60} "5. Retention."
 {¶ 61} Given that only employees are capable of being hired, employed, trained, supervised, or retained, Colter argues that the assault-or-battery exclusion is ambiguous as to whether it applies to the acts of third-party patrons. We do not agree. The Georgia Court of Appeals rejected the same argument when reviewing the same language in Brown, supra, reasoning as follows:
 {¶ 62} "On appeal, [the insured] argues that because the exclusion refers to negligent employment practices, the parties intended that it apply only to assaults by [the insured's] employees. We disagree. As noted above, the exclusion specifically encompasses any claim arising out of an assault or battery. Although the exclusion clearly applies to an assault by a negligently employed security guard, nothing in the provision limits it to such assaults or exempts third-party assaults from its reach. And, as shown by [the victim's] complaint, a third-party assault can form the basis of a negligent employment claim against [the insured]. Under these circumstances, we cannot accept [the insured's] extremely narrow interpretation of the exclusion." Brown, 581 S.E.2d at 342. We find this reasoning to be persuasive and equally applicable herein.
 {¶ 63} Colter also asserts that excluding insurance coverage for any claim arising out of or related to any assault or battery violates public policy and should not be permitted. Our review of the extensive record in this case reveals, however, that this issue was not briefed by Colter in the trial court. As a result, it has not been preserved for appellate review. But even if Colter had raised the issue below, we would be disinclined to accept her argument. We are unpersuaded that public policy precludes an insurer of nightclubs from excluding coverage for bodily injury claims arising out of or related to an assault or battery.
 {¶ 64} Finally, we need not decide whether Colter's settlement of her claims against Spanky's violated a cooperation clause in the Capitol insurance policy. Capitol has raised this issue as an alternative basis for affirming the trial court's entry of summary judgment in its favor. Having found no error in the trial court's entry of final judgment based on the assault-or-battery exclusion, however, we conclude that the parties' dispute about the cooperation clause is moot.
 {¶ 65} Based on the reasoning set forth above, we hereby overrule Colter's assignment of error and affirm the judgment of the Montgomery County Common Pleas Court.
Judgment affirmed.
Fain, J., and Donovan, J., concur.
[1] These cases are of varying degrees of relevance to the issue before us. The least helpful is American Fidelity FireIns. Co. The issue there was whether the son of a named insured also qualified as an insured under the terms of his father's automobile insurance policy. The case has little to do with the issue before us. In Lucy, a taxicab passenger fatally shot a pedestrian. The decedent's wife sued the driver and his automobile liability insurer. The insurer moved for summary judgment based on policy language excluding claims for "bodily injury to any person by assault, battery, or brutality[.]" Upon review, the Louisiana Court of Appeals held that this language only precluded claims involving an assault or battery committed by the insured taxi driver. Finally, Gawrieh involved a bar patron who shot other customers. The bar's insurer filed a declaratory judgment action, arguing that an assault-and-battery endorsement excluded coverage for the incident. The provision at issue stated: "This insurance does not apply to Bodily Injury or Property Damage arising from * * * [a]ssault and [b]attery committed by any insured, any employee of any insured, or anyother person, whether committed by or at the direction of any insured * * *." (Emphasis added). In a five-to-four decision, the Arkansas Court of Appeals found that the endorsement was ambiguous as to whether it excluded coverage for damages resulting from assaults committed by third parties. Somewhat curiously, the majority reached this conclusion despite the fact that the endorsement contained essentially the same language that Colter insists would make the Capitol policy unambiguous in the present case.
[2] Admittedly, the assault-or-battery exclusion in the present case excludes coverage for any assault or battery without specifying that it must involve two or more persons. By necessity, however, an assault or battery always involves at least two people. Thus, the reference in Hale to assaults or batteries "between two or more persons" does not meaningfully distinguish the exclusion in that case from the one before us.