A08A1882. AMERICAN NATIONAL PROPERTY AND
CASUALTY COMPANY v. AMERIEAST, INC. et al.
(677 SE2d 663)

ADAMS, Judge.

After completing repairs on an aircraft, the repair company lost the maintenance log books that belong with the aircraft. The aircraft owner brought suit against the repair company for the loss. In turn, the repair company's insurance carrier brought a declaratory judgment action against its insured and the aircraft owner and argued that the relevant policy did not cover the claim. On cross-motions for summary judgment by the aircraft owner and the insurer, the trial court ruled in favor of the aircraft owner. It also ruled in favor of the aircraft owner on its claim for attorney fees. The insurer now appeals. For the reasons stated below, we hold that the trial court should have found that the policy did not cover the loss. But we

affirm the award of fees in favor of the aircraft owner.

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). "A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant." (Citation omitted.) *Staton v. State Farm Auto. Ins. Co.*, 294 Ga. App. 208 (669 SE2d 164) (2008). So viewed, the evidence shows that Advanced Aviation Services, Inc. operated an aircraft maintenance facility in Columbus, Georgia. In 2004, Amerieast, Inc. placed its fixed winged aircraft in the custody of Advanced Aviation for the purpose of replacing a fuel pump. Amerieast also placed its aircraft's mainte-nance log books in the custody and control of Advanced Aviation because Advanced Aviation needed to make an entry therein in connection with the pump replacement. The log books were in a large folder that included individual records for the propeller, engine, and airframe, among other records.

Amerieast took back possession of the aircraft on December 1, 2004, after the fuel pump work was completed. However, the log books remained in Advanced Aviation's possession. Advanced Aviation performed additional work on the aircraft, and in January 2005 after the work was finished, Amerieast's principal, Kelsey Kennon, asked Advanced Aviation to return the log books. However, the log books could not be found. As averred by Stephen C. Berends, Advanced Aviation's principal, "[t]he loss of the Aircraft's logbooks took place after our maintenance work on the Aircraft had been completed and after the Aircraft had been returned to the owner."

In February 2006, Amerieast sued Advanced Aviation,[1] alleging, among other things, that it placed its aircraft and the aircraft's log books with Advanced Aviation, that Advanced Aviation lost the log books, and that Advanced Aviation owed a duty to Amerieast to properly complete and return the log books. According to the complaint, "Federal Air Safety Regulations governing maintenance and repair of aircraft [provide that] an integral part of the mainte-nance operation requires complete and proper maintenance entries into the log books of the aircraft." Amerieast further alleged that its damages included the loss of use of its aircraft and the cost of recreating the logbooks and returning the aircraft to airworthy service.

---

[1] The plaintiffs were Amerieast, Todd Reaves, and Kennon, and the defendants were Advanced Aviation, Berends d/b/a Advanced Aviation Services, Inc., and James Phillips.

In May 2006, Advanced Aviation's insurance carrier, American National Property and Casualty Company ("ANPAC"), filed this action seeking a declaratory judgment that its policy did not cover the claims asserted in the underlying action.[2] Amerieast stipulated that Advanced Aviation would not be required to file an answer in the underlying action until final resolution of the declaratory judgment action.

The ANPAC policy covers losses arising out of Advanced Aviation's operations at the Columbus Metropolitan Airport. The coverage identification page shows that Advanced Aviation was assessed premiums in connection with "COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY," specifically for "Hazard Division 1. Airport Operations," and "Hazard Division 2. Products and Completed Operations." The policy limit per occurrence was $1,000,000 with respect to each division.[3] The policy provided "COVERAGE B. HANGARKEEPER'S LIABILITY," with policy limits of $25,000 for each aircraft and $50,000 per occurrence.

The policy contains coverage exclusions. As pertinent here,

> [t]his policy does not apply to: . . . 7. Except with respect to liability under Coverage B, "Hangarkeepers Liability," . . . :
> A. Property while on premises owned by or rented to you or someone we protect for the purpose of having operations performed on such property by or on behalf of you or someone we protect.

1. ANPAC claims that the trial court erred in granting summary judgment to Amerieast and denying summary judgment to ANPAC because its policy did not provide coverage in light of Exclusion 7.A. We agree.

"The construction of a contract is a question of law for the court." OCGA § 13-2-1.

> Contracts, even when ambiguous, are to be construed by the court and no jury question is presented unless after application of applicable rules of construction an ambiguity

---

[2] The defendants in the declaratory judgment action were, (i) as related to the repair company, Advanced Aviation, Berends d/b/a Advanced Aviation Services, Inc., and Phillips, and (ii) as related to the aircraft owner, Amerieast, Reaves, and Kennon.

[3] Under Coverage A, ANPAC promises to "pay on your behalf all sums which you . . . become[ ] legally obligated to pay as damages" because of "property damage caused by an occurrence arising out of" the hazard divisions specified on the coverage identification page. Hazard Division 1, "Airport Operations," includes "the ownership, maintenance, operation or use of the airport and all operations necessary thereto. . . ." Hazard Division 2 covers goods or products or service operations identified in the policy's Hazard Description Schedule. This

remains. Insurance policies being contracts, the decisions have held that the matter of construction is for the court.

(Citations, punctuation and emphasis omitted.) *Travelers Ins. Co. v. Blakey*, 255 Ga. 699, 700 (342 SE2d 308) (1986). Ambiguities in an insurance contract are construed favorably to the insured and against the insurer, particularly if exemptions or exclusions are at issue. See *Broome v. Allstate Ins. Co.*, 144 Ga. App. 318, 319 (241 SE2d 34) (1977). However, "unambiguous terms of an insurance policy require no construction, and the plain meaning of such terms must be given full effect, regardless of whether they might be beneficial to the insurer or detrimental to the insured." (Footnote omitted.) *Grain Dealers Mut. Ins. Co. v. Pat's Rentals*, 269 Ga. 691, 693 (505 SE2d 729) (1998).

ANPAC argues that Advanced Aviation lost the log books belonging to Amerieast while the log books were on the premises of Advanced Aviation for the purposes of making maintenance entries therein.[4] Therefore, ANPAC maintains, the log books were on the premises "for the purpose of having operations performed on such property," and fall within the exclusion. We find ANPAC's argument persuasive. Our review of appellate decisions applying the exclusion at issue also support the conclusion that the exclusion applies in this case.

In *Cincinnati Ins. Co. v. Mallon*, 409 NE2d 1100 (Ind. App. 1980), a customer brought a number of paintings to the insured's business for the purpose of having the paintings framed. Id. at 1101. One of the paintings was lost. The Court of Appeals of Indiana found the policy to be clear and unambiguous, and it gave effect to the exclusion for property damaged "while on premises owned by or rented to the insured for the purpose of having operations performed on such property." (Punctuation omitted.) Id. at 1103.

Amerieast contends that *Mallon* is unpersuasive because in this case the maintenance operations on the aircraft had been completed and the log books were not on the premises for the purpose of performing "operations" on the log books, but for the purpose of record keeping. The term "operations" is not separately defined in the policy. In the context of an insurance policy, absent a definition the court is "entitled to use the dictionary to determine the plain and

---

schedule specifies "Fixed Wing Aircraft Repairs & Services (Excluding Propeller or Engine Overhaul) Sale of: Aircraft Parts not Installed." Further, Division 2 applies, as to goods or products, "after possession of the goods or products has been relinquished by you to others," and as to services, "if the occurrence happens after the services have been completed or abandoned."

[4] There was evidence that the log books were taken off the premises by a mechanic, but that they were also returned by the mechanic before they were lost, and Amerieast takes the position, consistent with ANPAC's, that the log books were lost on the premises.

generally accepted meaning of the term." *Empire Fire &c. Ins. Co. v. Daniels*, 279 Ga. App. 602, 605 (1) (631 SE2d 799) (2006). In this case, dictionary definitions of "operation" include the "performance of a practical work or of something involving the practical application of principles or processes." Webster's Ninth New Collegiate Dictionary, p. 827 (1986). "Operations" is defined in another source as "[a] doing or performing action; work; a deed." Webster's International Dictionary, Second Edition, p. 1707 (1959). The evidence shows that both the aircraft and the log books were delivered to Advanced Aviation in connection with the requested maintenance work and that Advanced Aviation was expected to make entries in the log books in connection with that maintenance. Thus, the log books were on Advanced Aviation's property in connection with its work, and that work included an action with respect to the log books: this encompassed "operations" on the log books for purposes of the policy. See *Portal Pipe Line Co. v. Stonewall Ins. Co.*, 845 P2d 746, 751 (Mont. 1993) (applying plain and ordinary meaning of the term "operation" in interpreting exclusion for property damaged "while on premises owned by or rented to the insured for the purpose of having operations performed on such property by or on behalf of the insured").

Amerieast also contends that the log books were being held by Advanced Aviation as part of an ongoing series of maintenance operations and that before the aircraft was returned to service, a maintenance record was made and there was therefore no "operation" left to perform. The evidence shows that after the initial maintenance work was completed in December 2004, Kennon told Advanced Aviation to hold the log books until subsequent planned work on the aircraft was completed. It can be inferred from the evidence that the log books were lost when additional entries were pending, in view of Berends's averment that "[b]ecause the logbooks were lost we had to abandon further efforts to make entries in the Aircraft's logbooks." But even if the log books were left on the premises in anticipation of additional maintenance procedures and were lost during a period when no additional entries to the books were pending and maintenance on the aircraft had been completed, this makes no difference.

In *Adman Products Co. v. Fed. Ins. Co.*, 543 NE2d 219 (Ill. App. 1989), the insured was in the business of assembling advertising displays. It suffered a fire on its premises that destroyed materials owned by a third party, which sued the insured for damages. Id. at 219-220. In language substantially the same as is at issue here, the policy excluded "property while on premises owned or occupied by or rented to the insured for the purpose of having operations performed on such property by or on behalf of the insured." (Punctuation

YALE LAW LIBRARY

omitted.) Id. at 220. On appeal from the underlying declaratory judgment action, the insured argued that the exclusion did not apply to finished goods because those goods were property waiting for pickup and not on the premises for purposes of performing operations. Id. at 221. The Appellate Court of Illinois disagreed:

> We agree that the very purpose for [the third party's] goods to be on [insured's] premises was to have work performed on the goods. Despite this fact, [insured] argues that [the policy] does not preclude coverage of finished goods because operations are not being performed on finished goods. To adopt [insured's] interpretation would require us to believe that the parties contemplated that goods delivered to [insured's] premises would be covered until [insured] began performing operations on the goods, at which time coverage ceased, and then coverage would again commence when [insured] completed its work on the goods. [Insured] provides no explanation as to why it would desire such a policy or why [insurer] would provide such a policy. We do not believe that this is what the parties contemplated upon binding themselves to the policy. [The policy] is unambiguous. It excludes coverage of property that is on [insured's] premises *for the purpose* of having operations performed on such property. The excluded property is defined by the purpose for which it is on premises owned or rented by [insured].

(Emphasis supplied.) Id. at 222. We find the foregoing reasoning both persuasive and applicable in this case. Amerieast delivered the log books to Advanced Aviation in contemplation of the maintenance work Advanced Aviation was contracted to perform, and thus the log books were on the premises for purposes of those operations, whether they had not yet commenced, had been completed, or one procedure had been finished and other procedures remained to be completed.

Amerieast contends that if the facts do come within Exclusion 7.A, the exclusion is ambiguous and should be construed in favor of finding coverage. Amerieast focuses on the lack of a definition of the term "operations" within the policy. But, as demonstrated above, the exclusion is not ambiguous when the plain and ordinary meaning of that term is used. Amerieast also argues that the alleged damage is to the aircraft, which was not on the premises at the time the log books were lost. However, Amerieast had undertaken to maintain the aircraft, and the log books were the aircraft's log books, and so we fail to see that the alleged distinction is material for purposes of

the exclusion. See generally *Bituminous Cas. Corp. v. Northern Ins. Co. of N.Y.*, 249 Ga. App. 532, 535 (548 SE2d 495) (2001) (damage was not to "other property" where "the insured was the general contractor and thus responsible for the entire construction project").

The trial court found that ANPAC's interpretation of Exclusion 7.A is not viable because it would negate virtually all of the liability insurance coverage which Advanced Aviation bought to afford liability protection in the event there was damage to tangible property on the premises. However, the exclusion does not negate the coverage. Hazard Division 1, "Airport Operations," covers property damage due to an occurrence arising out of "[t]he ownership, maintenance, operation or use of the airport and all operations necessary thereto. . . ." This is broad language when compared to the exclusion. Hazard Division 2 covers goods or products or service operations identified in the policy's Hazard Description Schedule, which in turn specifies "Fixed Wing Aircraft Repairs & Services (Excluding Propeller or Engine Overhaul) Sale of: Aircraft Parts not Installed." Further, Division 2 applies, as to goods or products manufactured, sold, handled, or distributed by the insured, "after possession of the goods or products has been relinquished by you to others," and as to services, "if the occurrence happens after the services have been completed or abandoned." Division 2 focuses coverage on relinquished products and completed services, and is not subsumed by the exclusion for property on the premises "for the purpose of having operations performed on such property." Accordingly, Exclusion 7.A does not render the coverage provisions meaningless. See *Capitol Indem. v. Brown*, 260 Ga. App. 863, 867 (2) (581 SE2d 339) (2003) (coverage endorsement not rendered useless by exclusion); OCGA § 13-2-2 (4) ("[t]he construction which will uphold a contract in whole and in every part is to be preferred").

Finally, the trial court also found an inconsistency between the coverage afforded by the policy in Coverage A and excluded by Exclusion 7.A, and concluded that because of this ambiguity the policy must be construed against ANPAC to find coverage for the insured. However, we find no unresolvable inconsistency since the purpose of the exclusion is to exclude certain coverage that might otherwise exist. In other words, as to the exclusion, the policy expressly provides that "it does not apply." See *Auto-Owners Ins. Co. v. Barnes*, 188 Ga. App. 439, 441 (1) (373 SE2d 217) (1988) ("a limited or specific provision will prevail over one that is more broadly inclusive") (citation omitted). Compare *Southern Trust Ins. Co. v. Dr. T's Nature Products Co.*, 261 Ga. App. 806, 809 (1) (584 SE2d 34) (2003) (where insurance contract may be construed two ways, the contract is construed in favor of the insured).

In view of the foregoing, we find that Exclusion 7.A is unam-

biguous. It excludes coverage for the loss of the log books. It follows that the $1,000,000 coverage provided by Coverage A is excluded by the terms of the policy, and the trial court erred in granting summary judgment to Amerieast and failing to grant summary judgment to ANPAC as to this issue. ANPAC also argues that Coverage B, "Hangarkeeper's Liability" does not cover the alleged loss, but the trial court expressly refused to rule on that issue and it remains outstanding. "This court is for the correction of errors, and where the trial court has not ruled on an issue, we will not address it." (Punctuation and footnote omitted.) *Carver v. Empire Fire &c. Ins. Co.*, 270 Ga. App. 100, 105 (605 SE2d 842) (2004).

2. ANPAC also moved for summary judgment against Advanced Aviation, Berends, and Phillips, and it is entitled to summary judgment against these defendants for the reasons and to the same extent as set forth in Division 1, supra.[5]

3. Lastly, ANPAC contends that the trial court erred in awarding Amerieast attorney fees and expenses associated with Amerieast's motion to strike a portion of ANPAC's argument. We disagree.

In its motion for summary judgment, ANPAC argued that certain statements made by Amerieast in its answer with respect to insurance coverage were admissions in judicio.[6] Amerieast's counsel wrote ANPAC's counsel and asked that ANPAC withdraw this allegation because Amerieast's statements of opinion or conclusions were not admissions in light of applicable legal authority, but ANPAC refused to change its position. Amerieast then moved to strike ANPAC's alleged improper argument and asked for an award of attorney fees and expenses of litigation pursuant to OCGA § 9-15-14. The trial court entered an order finding that it would not consider any allegations of Amerieast's pleadings to be admissions in judicio, although ANPAC's argument would not be expressly stricken, but

---

[5] ANPAC argued on appeal that it was entitled to summary judgment against these defendants because they failed to file an answer. However, summary judgment "is not an appropriate means by which a plaintiff can secure a judgment based upon the defendant's alleged default." *Williams v. Heykow, Inc.*, 171 Ga. App. 936, 937 (321 SE2d 431) (1984).

[6] ANPAC contended, among other things, that Amerieast admitted in judicio (i) that Coverage B did not apply to its allegations against Advanced Aviation in the underlying lawsuit, and (ii) that Advanced Aviation's business was not the maintenance, operation or use of an airport, and the policy's hazard division coverage therefore did not apply. In the alleged admissions, Amerieast either made an express conclusion as to the policy's coverage or, considered in context with ANPAC's complaint, contended that the policy language was not applicable. For example, Amerieast "den[ied] Coverage B . . . applies to the facts presented in the underlying action," and, in response to ANPAC's claim that the policy defined "airport operations" as the "ownership, maintenance, operation or use of the airport," Amerieast maintained "the underlying Defendants were not involved in the ownership, maintenance, or operational use of an airport in relation to the claims at issue." Amerieast changed the latter allegation in its amended answer, but ANPAC maintained that Amerieast changed its position without seeking to withdraw its admission in judicio.

reserved ruling on Amerieast's fee claim. The trial court subsequently awarded Amerieast $5,015.79 as the reasonable value of the attorney fees incurred in researching and writing the motion to strike. The trial court based its award upon finding that ANPAC "in the face of clear notice . . . [of] the state of the law," persisted in asserting a position that was not substantially justified and thus unnecessarily expanded the scope of the proceeding.

OCGA § 9-15-14 (b) allows

> a trial court to award attorney fees if it finds (1) that an attorney or party brought or defended an action, or part of an action, that lacked substantial justification; or (2) that the action, or part of it, was interposed for delay or harassment; or (3) that an attorney or party unnecessarily expanded the proceedings by other improper conduct.

(Footnotes omitted.) *DeKalb County v. Adams*, 263 Ga. App. 201, 203 (587 SE2d 302) (2003). "We affirm a fee award under this Code section unless the trial court abused its discretion." (Footnote omitted.) *Bircoll v. Rosenthal*, 267 Ga. App. 431, 431-432 (600 SE2d 388) (2004).

ANPAC relies on OCGA § 24-3-30, which provides that "[w]ithout offering the same in evidence, either party may avail himself of allegations or admissions made in the pleadings of the other." However, this statute applies to admissions of fact and not to "an admission which is merely an opinion on the part of the party making it as to its legal effect." (Citation omitted.) *Ellerbee v. Interstate Contract Carrier Corp.*, 183 Ga. App. 828, 829 (2) (a) (360 SE2d 280) (1987). Amerieast's allegations as to matters of insurance coverage were not admissions of fact. See *Conaway v. American Guarantee &c. Ins. Co.*, 189 Ga. App. 194, 195 (375 SE2d 144) (1988). Accordingly, we conclude that the trial court did not abuse its discretion in awarding attorney fees and litigation expenses to Amerieast. See, e.g., *Forest Lakes Home Owners Assn. v. Green Indus.*, 218 Ga. App. 890, 894-895 (463 SE2d 723) (1995).

*Judgment affirmed in part and reversed in part. Smith, P. J., and Mikell, J., concur.*

DECIDED MARCH 12, 2009 —
RECONSIDERATION DENIED APRIL 10, 2009 

*Mozley, Finlayson & Loggins, Anne M. Landrum*, for appellant.

YALE LAW LIBRARY

*David W. Boone, E. Alan Armstrong*, for appellees.