**THIRD DIVISION**
**ANDREWS, P. J.,**
**DILLARD and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**October 30, 2013**

# In the Court of Appeals of Georgia

A13A1613. STC TWO, LLC v. IRMA FOX SHULMAN-WEINER et al.

MCMILLIAN, Judge.

STC Two, LLC appeals the trial court's grant of summary judgment to Irma Fox Shulman-Weiner ("Weiner") and Susan Tessel ("Tessel"), as Co-Trustees of the Irving Shulman Trust (the "Trust"), and Staircase Old National, LLC ("Staircase") (collectively "Appellees") on STC's complaint arising out of a purported agreement to modify a longstanding lease agreement.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citation omitted.) *685 Penn, LLC v. Stabilis Fund I, L.P.*, 316 Ga. App. 210, 210 (728 SE2d 840) (2012).

So viewed, the evidence shows that the Trust and Staircase jointly own real property in south Fulton County (the "Property"). Weiner, co-trustee of the Trust, and Stanford Shulman ("Shulman"), the sole member and registered agent for Staircase, have had an ownership interest in the Property for over 50 years. On June 27, 1997, Weiner and Shulman, in their individual capacities, entered into a "PCS Site Agreement" (the "Lease") with Sprintcom, Inc. ("Sprintcom"). Under the terms of the Lease, Sprintcom rented a portion of the Property (the "Site"), upon which it constructed towers and other wireless communication structures. The Lease provided for four automatic renewals of the original five-year lease term and thus was slated to expire on June 27, 2022. At the time this dispute arose, Sprintcom and/or STC, as Sprintcom's assignee, had exercised the option to renew the lease for two five-year renewal terms.

The record reflects three subsequent amendments to the Lease, and it appears that the first two amendments to the Lease also may have been signed by Sprintcom

and by Weiner and Shulman in their individual capacities.[1] The record contains a signed copy of a "First Amendment to PCS Site Agreement," which Appellees produced in discovery. This amendment was signed by Sprintcom and Weiner and Shulman in their individual capacities. The record also contains an unsigned copy of a "Second Amendment to PCS Site Agreement," apparently from 2001, also produced by Appellees in discovery. That document, too, contains signature lines for Sprintcom and for Weiner and Shulman in their individual capacities.[2] But the "Third Amendment to PCS Site Agreement," executed in February 2010, was signed by STC on the one hand and Weiner and Tessel, as co-Trustees of the Trust, and by Shulman on behalf of Staircase on the other. The recitals to the third amendment reflect that Staircase and the Trust were representing that they were the owners of fee simple title to the Lease Site and further reflect that Sprintcom had assigned its interest under the Lease to STC, which in turn had subleased the Site to a third party. The parties

---

[1] We note that Appellees represented below and also represent on appeal that all prior Lease amendments were signed by Staircase and by Weiner and Tessel as co-trustees on behalf of the Trust, but in support of this assertion, they cite only to the third amendment. However, the copies of the other amendments produced by Appellees in discovery appear to belie this representation.

[2] The recitals to the third amendment reference a second amendment to the Lease dated August 21, 2001.

3

apparently agree that we should consider STC to be the lessee and the Trust and Staircase to be the lessors under the Lease.

Subsequently, in April 2011, Chris Felder ("Felder"), a senior land acquisition specialist for Crown Castle, an affiliate of STC,[3] began contacting Weiner to discuss the possibility of modifying the Lease to incorporate additional renewal periods. Based on these discussions, STC proffered to Weiner and Shulman a letter agreement dated April 7, 2011, which proposed adding six additional lease terms, with a final expiration date of June 26, 2052, in exchange for $50 in consideration. This proposed letter agreement defined the term "Lessor" to mean Weiner and Shulman, individually, without referencing the Trust, Staircase or Tessel, Weiner's co-trustee. The signature lines also listed Weiner and Shulman in their individual capacities. The letter agreement further contemplated that these parties would later enter into a formal amendment to the Lease. An accompanying e-mail from Felder stated that "we are only proposing to modify the length of time on the [Lease], and as such, the other provisions of the [Lease] are not addressed in the letter."

In response, Weiner and Shulman proposed a change to the $50 consideration in the April 7 letter. Instead of a one-time $50 payment, they proposed either

[3] Crown Castle and STC generally will be referred to jointly herein as "STC."

4

payments of $250 per year for each year the extension was granted or a one-time payment of $7,500. STC countered this offer with a revised letter agreement dated May 26, 2011 (the "Revised Agreement"), which retained the $50 in consideration, but added the following provision:

> [STC] agrees to pay [Weiner and Shulman] the sum of *Seven Thousand Five Hundred Dollars* ($7,500.00) for executing and delivering the Letter Agreement to [STC] by no later than June 1, 2011, and executing and delivering the Lease Amendment to Lessee within ten (10) days of receipt of the executable document(s) (the "Expedite Fee"). [Weiner and Shulman] understand[] time is of the essence and if the signed Lease Amendment is not delivered to [STC] within the specified time period, [Weiner and Shulman] forfeit[] the Expedite Fee. [Shulman and Weiner] further agree[] that if the Lease Amendment is not fully executed for any reason, [Shulman and Weiner] forfeit[] the Expedite Fee. The Expedite Fee is a one-time payment due and payable within sixty (60) days of the full execution of the Lease Amendment.

The Revised Agreement retained the same definition of "Lessor" and the same signature lines in Weiner's and Shulman's individual capacities. It, too, made no reference to the Trust, Tessel, or Staircase.

After a series of e-mails and letters from Felder prompting Weiner and Shulman to sign the letter agreement, they finally executed and returned the Revised

5

Agreement on June 1, 2011. However, on or around June 27 and/or June 29, 2011, Shulman and Weiner appear to have notified STC that they were terminating the Revised Agreement on the ground that STC was in default by failing to pay the Expedite Fee and by failing to deliver a proposed lease amendment by June 1, 2011. Subsequently, on July 6, 2011, counsel for Weiner and Shulman returned to STC as untimely[4] and insufficient, two checks totaling $50 made payable to Weiner and Shulman. The counsel's cover letter indicates that although the checks were dated June 15, 2011, they were received only a few days earlier.

At some point, STC forwarded a proposed "Fourth Amendment to PCS Site Agreement," proposing to amend the agreement to add additional renewal terms extending the lease term through June 26, 2052 (the "Proposed Amendment"). The Proposed Amendment, however, defined the term "Lessors" to mean Weiner and Tessel as Co-Trustees of the Trust and Staircase, and included signature lines for Weiner, Tessel and Shulman in their respective representative capacities. Although the Proposed Amendment added six additional five-year terms with a final expiration of June 26, 2052, it did not specifically address the rent to be paid under those

---

[4] The letter actually reads "*on timely* and insufficient in amounts," but this appears to be a typographical error. (Emphasis supplied.)

6

extensions. Rather, it provided that all other terms of the Lease, as amended, would remain in full force and effect, which effectively proposed that the lease amounts set forth in the Lease, as amended, also would remain in effect during the renewal periods.

When Weiner, Tessel, and Shulman failed to sign the Proposed Amendment, STC filed the complaint in this action seeking declaratory relief, specific performance and damages. The parties subsequently filed cross-motions for summary judgment, and following a hearing and further briefing, the trial court granted the Appellees' summary judgment motion and denied STC's motion. The order further declared that the original renewal term of the Lease remained in effect, and the Lease would terminate on June 27, 2022.[5] This appeal followed.

1. STC first argues that the trial court erred in granting summary judgment to the Appellees because they failed to present sufficient evidence to refute the validity

---

[5] The trial court gave no basis for this decision, although in a December 12, 2012 e-mail, the trial judge's law clerk stated that the trial court "has received the supplemental letter briefing in the case and is persuaded that the [Appellees] are correct." That letter briefing specifically addressed a provision in the will establishing the Trust that requires the signatures of both co-trustees to bind the Trust. But our review of the issues on appeal is de novo, and "a summary judgment ruling that is right for any reason—particularly a ruling that involves construction of a contract—must be affirmed." (Citations omitted.) *Monitronics Intl., Inc. v. Veasley*, __ Ga. App. __ (2) (746 SE2d 793) (2013).

and enforceability of the Revised Agreement. Stated another way, STC asserts that Weiner's and Shulman's individual execution of the Revised Agreement and its own tender to them of $50 and a proposed lease amendment are sufficient to bind the Trust and Staircase to a 30-year extension of the Lease. But Appellees argue that the Revised Agreement was not binding in this regard because, inter alia, it failed to contain any consideration for the extension of the Lease term and the parties lacked mutual assent as to the essential terms of any such extension. We agree.

> To constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate. A contract is unenforceable where there is no meeting of the minds between the parties regarding a material element thereof. And all essential elements, including the element of consideration, must be certain.

(Citations and punctuation omitted.) *Graham v. HHC St. Simons, Inc.* __ Ga. App. __ (2) (746 SE2d 157) (2013). Moreover,

> [a] provision for the renewal of a lease must specify the terms and conditions of the renewal with such definite terms and certainty that the court may determine what has been agreed on, and if it falls short of this requirement it is not enforceable. It must be certain and definite both as to the time the lease is to extend and the rent to be paid.

8

(Citation omitted.) *Smith v. Huckeba*, 232 Ga. App. 374, 375 (1) (501 SE2d 877) (1998).

> It is not necessary, however, that the renewal option specifically list these terms. It is sufficient if it provides a definite method for determining the amount of the rent and the duration of the renewal lease. The renewal provision is unenforceable only if these terms are not specified and no method is provided by which they can be determined.

(Citation omitted.) *Asian Square Partners, L.P. v. Cuong Quynh Ly*, 238 Ga. App. 165, 166 (518 SE2d 166) (1999).

Although the Revised Agreement contains two forms of consideration, it is apparent from the face of that agreement that neither of these two payments was intended as consideration for the proposed 30-year extension of the Lease. The first consideration, the $50 payment, was in exchange for Weiner's and Shulman's agreement to enter into the Revised Agreement itself, as the agreement provides, "[f]or and in consideration of *Fifty Dollars* ($50.00) paid by Lessee to Lessor, the parties agree" to the terms listed in the Revised Agreement. STC's subsequent tender of $50 to Weiner and Shulman following their execution of the Revised Agreement and before they signed any lease amendment indicates that STC's intent in drafting that language was to provide consideration for the execution of the Revised

9

Agreement alone. In any event, the payment was tendered to Weiner and Shulman, individually, and thus cannot be considered as consideration flowing to the Trust or to Staircase, which STC proffered as signatories to the Proposed Amendment. See generally *Milk v. Total Pay and HR Solutions, Inc.*, 280 Ga. App. 449, 451-452 (634 SE2d 208) (2006) (member of a limited liability company is considered separate from the company); *Soley v. Dodson*, 256 Ga. App. 770, 772 (569 SE2d 870) (2002) ("a person's individual and representative capacities may not be substantially identical"). And Tessel, the Trust's other co-trustee, received no consideration.

The Revised Agreement also provides that STC would pay Weiner and Shulman $7,500 "for executing and delivering the [Revised] Agreement to [STC] by no later than June 1, 2011, and executing and delivering the Lease Amendment to [STC] within ten (10) days of receipt of the executable document(s) (the 'Expedite Fee')." But as the Revised Agreement makes clear, this payment would be forfeited if Weiner and Shulman did not abide by the stated deadlines because "time [was] of the essence." Thus, if Weiner and Shulman had executed the Proposed Amendment on the 11th day after receiving it, they would have forfeited the $7,500 payment. Accordingly, as the term "Expedite Fee" indicates, this payment was in consideration for completing the transaction in an expedited manner and was not intended as rent

or any other payment in consideration for a 30-year extension of the Lease.[6] And once again, this consideration was to be paid to Weiner and Shulman in their individual capacities, not to the Trust and Staircase. Accordingly, we find that the Revised Agreement contains no consideration flowing to the Trust and Staircase in exchange for extending the Lease for 30 years.[7]

Turning next to an examination of the terms to which Weiner and Shulman agreed in executing the Revised Agreement, we note that the agreement provided that STC, Weiner and Shulman "will enter into an amendment to the Lease ("Lease Amendment") wherein the term of the Lease will be modified." The agreement then stated that the lease will be amended "to provide six (6) additional five-year Renewal Terms, or a total of eight (8) remaining Renewal Terms with a final expiration date

---

[6] Even if Shulman's and Weiner's counteroffer to the April 7, 2011 letter agreement could be considered a proposal for a one-time payment of $7,500 as consideration for extending the term, STC rejected that offer and instead counteroffered the $7,500 as an "Expedite Fee."

[7] We are aware that under the terms of the Revised Agreement, Weiner and Shulman represented that they had the full authority to enter into the Revised Agreement, to perform all obligations thereunder, and to deliver all documents, including a Lease Amendment, required by the Agreement. But this provision does not alter the fact that the stated consideration flowed to them in their individual capacities, rather than to the Trust or Staircase, nor does it alter the fact that the Agreement provides no consideration for extending the Lease term.

of June 26, 2052." But the Revised Agreement does not address the rent to be paid during those extensions, nor does it provide a method for calculating this rent. Additionally, it fails to state that the Lease's existing terms, rental or otherwise, would remain in effect following the proposed modification. Thus, pretermitting whether the signatures of Weiner and Shulman could bind the Trust and Staircase to the Revised Agreement, nothing in that agreement binds anyone to any rental amount and certainly not to the rental rate contained in the Lease, as amended, as indicated in the Proposed Amendment. Rather, the Revised Agreement is completely silent as to any rent or other consideration to be paid by STC for the six additional extensions of the Lease term.

Accordingly, even if the parties agreed in principle that the term of the lease would be modified, the Revised Agreement fails to reflect any agreement on the essential rental amount for any such lease modification. Thus, the Revised Agreement does not contain an enforceable agreement to extend the term of the Lease. *AMB Property, L.P. v. MTS, Inc.*, 250 Ga. App. 513, 515 (551 SE2d 102) (2001) (pricing provision that is undisputably vague or indefinite is not ambiguous; it is

unenforceable).[6] "In this instance, the amount of rent to be paid was not agreed upon and was subject to future negotiations. . . . The question is whether that proposal was enforceable, and under the law of Georgia, it is not." *Insurance Industry Consultants, Inc. v. Essex Inv., Inc.*, 249 Ga. App. 837, 843 (2) (549 SE2d 788) (2001). See also *Patellis v. 100 Galleria Parkway Assocs.*, 214 Ga. App. 154, 154-155 (1) (447 SE2d 113) (1994) (failure of rent renewal agreement to state the amount of rent or to provide a method for computing it renders agreement unenforceable for uncertainty); *Jackson v. Easters*, 190 Ga. App. 713, 715 (1) (379 SE2d 610) (1989) ("Unless all the terms and conditions are agreed on, and nothing is left to further negotiations, a contract to enter into a contract in the future is of no effect. An agreement to reach an agreement is a contradiction in terms and imposes no obligation on the parties thereto.") (citations and punctuation omitted).

---

[6] Even if we were to consider the Revised Agreement as ambiguous, any such ambiguity must be construed against STC as the agreement's drafter. OCGA § 13-2-2. In any event, the record contains no parol evidence to fill in the rental term. Although Felder's e-mail and letter correspondence indicate that STC was "only proposing to modify the length of time on the lease, and as such, the other provisions of the lease are not addressed in the letter," Felder's correspondence never specified that the existing rent amounts would remain in effect during the six lease extensions, nor did he specify another rent amount. And although Felder stated in his deposition that he believed the Revised Agreement contained all the necessary terms and that no further negotiations would ensue, he did not state that he ever discussed the rent amount for the modified extension period with Weiner or Shulman.

13

2. Because we have found that the Revised Agreement is unenforceable, we need not reach STC's argument with regard to whether the Appellees established that Weiner lacked unilateral authority to bind the Trust to its terms.

3. Similarly, given our holding in Division 1, we find no error in the trial court's denial of STC's motion for summary judgment in its entirety.

*Judgment affirmed. Andrews, P. J., and Dillard, J., concur.*