**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**November 18, 2014**

# In the Court of Appeals of Georgia

A14A0995. BLAKE et al. v. KES, INC. et al.                    DO-052

DOYLE, Presiding Judge.

In this action arising from the death of their son Paul Daniel Blake in a residential care facility, plaintiffs Carl and Yvonne Blake appeal the denial of their summary judgment motion and the grant of summary judgment to defendants KES, Inc., Sandra and Kenneth Browner, Mable Sempler, and Nicole Wise (collectively "KES"). The Blakes contend that the trial court erred by refusing to consider, on procedural grounds, certain depositions and exhibits, including the deposition of their medical expert. For the reasons that follow, we affirm the denial of the Blakes' motion for summary judgment, vacate the grant of summary judgment to KES, and remand.

To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. On appeal from the grant of summary judgment this Court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.[1]

So viewed, the facts show that Paul Blake was an adult diagnosed with several developmental disabilities from birth, including organic personality disorder, moderate intellectual disability, and partial complex seizures. By 2005, Paul resided with caretakers at a personal care home and generally spent his days at a KES day habilitation facility, where he received services pursuant to a contract between KES and his parents. In addition to his seizures, Paul had a history of leaving his assigned area without notice or permission, and he needed constant line-of-sight supervision, in addition to daily medication.

On September 22, 2009, Paul arrived at the KES facility at approximately 9:00 a.m. and complained of dizziness and feeling poorly. Paul's immediate care giver

---

[1] (Citation and punctuation omitted.) *Home Builders Assn. of Savannah v. Chatham County*, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003), quoting *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

2

allowed him to rest without joining other activities. Around noon, while Paul was finishing his lunch, he asked if he could return to his assigned task of cleaning a computer desk, but he was asked to stay at the lunch table so he could finish eating and continue to rest. When the care giver was out of the room, Paul left the classroom and walked out of the building. Paul was not immediately followed, but staff began tracing his path thereafter.

At approximately 12:19 p.m., security camera footage shows that as Paul walked alongside a van parked at the side of the building, he faltered, leaned into the side of the van, and fell forward down to the ground. Approximately 22 seconds later, a KES worker arrived at Paul's body, and despite the worker's prompting, Paul remained unresponsive. Approximately 40 seconds later another worker, Mabel Semper, arrived and called into the building to advise the staff that they had located Paul. She had to make two calls to reach someone, and in the minutes that followed, Semper called 911 and remained on the line with the operator. During this time, a third employee, Kenneth Browner, arrived and checked Paul's mouth for foreign objects, and Paul was observed to be breathing with a faint pulse. Other employees arrived and they repositioned Paul to aid in his breathing, and they began CPR chest compressions as instructed by the 911 operator over speakerphone. There was a

3

several minute time gap between Paul's fall and the administration of CPR. Emergency personnel arrived minutes later, took over emergency care, and prepared him for transport. Treatment continued en route and at the hospital, but Paul was pronounced dead at the hospital soon thereafter. The cause of death listed by the emergency room physician was "cardiac arrest status post likely seizure."

Based on Paul's death, the Blakes sued KES, alleging claims for negligence, negligence per se, wrongful death, intentional infliction of emotional distress, breach of contract, and negligent supervision and training. KES answered, discovery ensued, and both parties moved for summary judgment. Following a hearing, the trial court granted summary judgment to KES and denied the Blakes' motion. The trial court based its ruling, in part, on the exclusion of certain unauthenticated documents and depositions not filed 30 days before the hearing. The Blakes now appeal.

1. *KES Motion for Summary Judgment.*

(a) The Blakes contend that the trial court, in granting summary judgment in favor of KES, erred by failing to consider, on procedural grounds, the deposition testimony of their medical expert, Dr. Anthony Kimani. We agree.

4

Kimani was deposed on April 19, 2013.[2] On April 30, 2013, both KES and the Blakes moved for summary judgment, and the Blakes filed originals of the depositions in their custody and requested KES to file, among others, an original of Kimani's deposition. On May 22, 2013, the trial court entered a notice of hearing setting a June 7, 2013 hearing date for the motions. On May 24, 2013, KES filed three of the four original deposition transcripts requested by the Blakes – the depositions of Carl Blake, Yvonne Blake and Tonya Collins – and on May 30, 2013, KES filed a timely response to the Blakes' motion. On June 3, 2013, the Blakes filed their timely response opposing KES's motion and attached a copy of Kimani's deposition.[3] The hearing was held as scheduled on June 7, 2013, and at the hearing both parties referred to and relied on Kimani's deposition.

---

[2] Kimani's deposition included testimony stating, "I think that Paul Blake's chance of a successful resuscitation was at least 50 percent, so I think it was more likely than not that had he received CPR in a timely fashion that he would have responded and been resuscitated."

[3] On May 30, 2013, Kimani received from the court reporter a copy of his deposition for review. By law, Kimani had 30 days to review the transcript, which he did, returning his signed errata sheet on June 21, 2013. See OCGA § 9-11-30 (e). The court reporter sent KES the original transcript on July 9, 2013, 22 days before the trial court entered its order, but KES did not file the original deposition until September 3, 2013.

On July 30, 2013, the trial court entered an order denying the Blakes' summary judgment motion and granting KES's motion, citing a lack of evidence in support of the Blakes' claims and in opposition to KES's motion, which was supported by competent evidence. This ruling was based in large part on the trial court's conclusion that it was "constrained to disregard" the copy of the Kimani deposition filed by the Blakes before the hearing on the grounds that KES had objected to its consideration[4] and it was merely a copy and not signed by Kimani. Specifically, the court noted that the unsigned transcript of Kimani's deposition contained a request by counsel that Kimani be allowed to review and sign the deposition, so the court reasoned that "[a]bsent proof that Dr. Kimani waived the opportunity to 'read and sign' his

---

[4] We have reviewed the record and the transcript of the summary judgment hearing, and we find no objection by KES to the use of Kimani's deposition. KES objected only to the use of eight exhibits (D, E, F, I, K, P, R, and S) attached to the Blakes' motion for summary judgment, due to the lack of authentication. To the extent that the trial court's ruling is premised on an objection by KES, this was error. Also contrary to the trial court's ruling, KES appears to have relied on the Kimani deposition to argue that the Blakes failed to show causation. See generally *Porter Coatings v. Stein Steel & Supply Co.*, 247 Ga. 631, 632 (278 SE2d 377) (1981) (failure to meet time requirement "does not preclude a finding of harmless error, waiver, estoppel, or acquiescence in the trial court's consideration of supporting material not timely filed"); *Suttle v. Northside Realty Associates, Inc.*, 171 Ga. App. 928, 932 (2) (c) (321 SE2d 424) (1984) ("This court has consistently reached a finding of waiver where no objection was made to the late filing of an affidavit – whether the affidavit was in support of, or in opposition to, a motion for summary judgment.").

6

deposition, the testimony adduced therein is inadmissible" as of the hearing date, citing *Steed v. Fed. Nat. Mtg. Corp.*[5]

But even in the absence of an original deposition filed with the court, "case law specifically allows a trial court to rely on deposition excerpts filed by a party in support of a motion."[6] "[F]iling those portions of discovery material necessary to [a] motion[] for summary judgment" is permitted, and it is not error for a trial court to consider deposition excerpts even if they "were not certified copies."[7] Notably, the deposition copy filed in this case contained the court reporter's signed certification that the transcript was a true and complete record of the evidence given by Kimani,

---

[5] 301 Ga. App. 801, 808 (1) (c) (689 SE2d 843) (2009). Based on the facts of this case, *Steed* does not require exclusion. In that case, the Court relied on OCGA § 9-11-30 (e), which provides that "[i]f requested by the deponent or a party before completion of the deposition, the deponent shall have 30 days after being notified by the officer that the transcript . . . is available in which to review the transcript . . . ," and held that it was error to admit the deposition of a plaintiff who objected to the use of his deposition testimony because he was never notified that his deposition transcript was available to review and sign. Here, the record shows that Kimani *was* allowed to review and sign his deposition, which he did in a timely manner, and neither he nor any party objected to the lack of his signature on the copy the Blakes filed with the court.

[6] (Punctuation omitted.) *Shannon v. Office Max North America, Inc.*, 291 Ga. App. 834 (2) (662 SE2d 885) (2008).

[7] *Jacobsen v. Muller*, 181 Ga. App. 382, 383 (3) (352 SE2d 604) (1986), citing OCGA § 9-11-29.1 (a) (5).

7

who was duly sworn by the court reporter. Therefore, the mere fact that the deposition on file was a copy did not preclude its consideration in opposition to KES's motion.[8] Based the record before us, "we vacate and remand with direction that [Kimani's deposition] be considered by the trial court in deciding [KES's] summary judgment motion. . . ."[9]

(b) The Blakes also contend that the trial court erred by excluding Exhibits 1-A through 1-M attached to their response in opposition to KES's motion for summary judgment on the grounds that they were objected to by KES[10] and "not attached to any affidavit, are not self-authenticating, nor are they otherwise authenticated." The Blakes correctly point out, however, that these exhibits were created, prepared, and

---

[8] See id. See also *Village Auto Ins. Co. v. Rush*, 286 Ga. App. 688, 693 (5) (649 SE2d 862) (2007). This Court has remanded cases for the trial court to consider deposition testimony where both parties had relied on depositions that were requested to be filed but had not been filed with the trial court before its ruling or even before the appeal was filed. See, e.g., *Wilson v. Obstetrics & Gynecology of Atlanta, P.C.*, 304 Ga. App. 300, 304 (1) (696 SE2d 339) (2010); *Ga. Messenger Svc. v. Bradley*, 302 Ga. App. 247, 249 (1) (690 SE2d 888) (2010), citing *Snipes v. Housing Auth. of DeKalb County*, 250 Ga. App. 771, 771-772 (552 SE2d 133) (2001).

[9] *Ga. Messenger Svc.*, 302 Ga. App. at 249 (1).

[10] As set forth above, KES only objected to 8 Exhibits. KES did not object to Exhibits 1-A to 1-M. To the extent the trial court's ruling was dependent upon such objection, it was error.

completed by KES in the regular course of business and produced by KES in discovery. "[A] document can be authenticated by circumstantial evidence. One such circumstance, when coupled with other evidence, is a party's production of the document during discovery."[11] Thus, the trial court improperly excluded these exhibits when considering KES's summary judgment motion.

2. *Blakes' Motion for Summary Judgment.*

The Blakes contend that the trial court erred by excluding the depositions of Carl Blake, Yvonne Blake, and Tonya Collins, and Exhibits A to S attached to the Blakes' motion, on which the Blakes relied in support of their motion for summary judgment. The trial court excluded this evidence on the basis that the depositions were not timely filed and the exhibits were not "self authenticating, [not] attached to an authenticating affidavit, not authenticated by reference to deposition testimony or previously filed evidence of record." Pretermitting whether the trial court erred by excluding the depositions and exhibits,[12] KES timely filed competent evidence,

_____

[11] *See USF Corp. v. Securitas Security Svcs. USA*, 305 Ga. App. 404, 406 (699 SE2d 554) (2010).

[12] As pointed out by the Blake's in their motion for reconsideration, these exhibits were authenticated by witnesses whose depositions were properly part of the record and should have been considered in ruling on the motion. Nonetheless, as set forth above, KES's evidence properly supports the denial of the Blake's summary

9

including expert testimony, disputing the Blakes' assertions and evidence in support of the Blakes' summary judgment motion. Therefore, the court did not err by denying the Blakes' motion at this stage.[13]

3. *Supplemental briefing.*

At the summary judgment hearing, KES requested to file a reply brief in support of its summary judgment motion.[14] The trial court stated that "[y]ou can file it with the clerk," and told the Blakes' counsel, "[i]f you want to file a response as well, or a reply as well, I'll give you . . . 10 days." Despite this colloquy, the trial court, in its written order, ruled that it was "constrained to . . . disregard" the supplemental briefing on the summary judgment motions due to the lack of consent of the opposing party and the timing of the filings. Whether or not consent is required, here the Blakes' attorney specifically stated that he had no objection to KES filing its reply brief. And the trial court did have discretion to consider the

judgment motion even if the trial court had considered these exhibits.

[13] See *Home Builders Assn. of Savannah*, 276 Ga. at 245 (1) (summary judgment is only appropriate if "there is no genuine issue of material fact and . . . the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law").

[14] KES stated that it had already emailed a copy to the Blakes' counsel.

supplemental briefing it authorized,[15] as well as any evidentiary support for that briefing already properly before the court in earlier timely filings.[16]

4. The Blakes' remaining enumerations are either moot or premature at this time.

*Judgment affirmed in part, vacated in part, and case remanded with direction. Miller and Dillard, JJ., concur.*

---

[15] See, e.g., *STC Two, LLC v. Shulman-Weiner*, 325 Ga. App. 245, 249 fn. 5 (750 SE2d 730) (2013) (affirming the trial court's judgment and noting the trial court's consideration of supplemental briefs filed after a hearing on cross summary judgment motions). See also *Porter Coatings*, 247 Ga. at 631 (OCGA § 9-11-6 (b) and (d) "provide flexibility by authorizing the trial judge, or the parties by stipulation, to extend the filing times" for purposes of OCGA § 9-11-56).

[16] The trial court's order stated that KES's reply brief and the Blakes's sur-reply brief would be disregarded in their entirety, but even if the trial court had properly exercised its discretion to exclude the briefs, rather than considering itself constrained to do so, the exhibits attached to KES's reply brief were excerpts of depositions previously timely filed with the court and should not have been excluded.

11