**THIRD DIVISION**
**GOBEIL**
**COOMER and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 13, 2019**

# In the Court of Appeals of Georgia

A18A1789. GOLDEAGLE VENTURES, LLC v. COVINGTON SPECIALTY INSURANCE COMPANY.

COOMER, Judge.

Goldeagle Ventures, LLC ("Goldeagle") appeals from the trial court's denial of its motion for partial summary judgment and the grant of summary judgment in favor of its insurer, Covington Specialty Insurance Company ("Covington"). In its motion, Goldeagle argued that the insurance policy that it obtained from Covington covered the cost of repairing lights that were damaged in an electrical storm in the space it leased from Sugarloaf Mills Limited Partnership at Sugarloaf Mills Mall. Conversely, Covington argued that the lights were not covered under the policy, and the trial court agreed. We affirm the judgment of the trial court.

"On appeal from the grant of summary judgment this Court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." *Blake v. KES, Inc.*, 329 Ga. App. 742, 742 (766 SE2d 138) (2014) (footnote omitted). Viewed in the light most favorable to Goldeagle, the evidence shows that Goldeagle leased a building that contained Open High Bay Industrial Metal Halide 400W lights ("the lights") that were attached to the building and in place before Goldeagle leased the space from Sugarloaf Mall. According to Goldeagle, the lights were attached to the end of a metal rod by a hook and thumb screw attached to the light assembly. They were plugged into a common power receptacle above the support beam to which the metal rod was attached and could be removed by hand without using any tools. A lightning storm damaged 103 of the 320 lights.

At the time of the storm, Goldeagle had a commercial property insurance policy issued by Covington. The policy provided $125,000 in coverage for "Business Personal Property," as stated on the "Commercial Property Coverage Part Declarations." In pertinent part, the relevant provisions state:

## A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

### 1. Covered Property

Covered Property . . . means the type of property described in this section, **A. 1.** and limited in **A. 2.**, Property Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property.

> **a. Building**, meaning the building or structure described in the Declarations, including: (1) Completed additions;  (2) Fixtures, including outdoor fixtures; (3) Permanently installed: (a) Machinery and (b) Equipment; (4) Personal property owned by you that is used to maintain or service the building or structure or its premises. . . .
>
> **b. Your Business Personal Property** located in or on the building as described in the Declarations . . . consisting of the following unless otherwise specified in the Declarations or on the Your Business Personal Property – Separation of Coverage form: (1) Furniture and fixtures; (2) Machinery and equipment; (3) "Stock"; (4) All other personal property owned by you and used in your business; (5) Labor, materials or services furnished or arranged by you on personal property of others; (6) Your use interest as tenant in improvements and betterments.

Improvements and betterments are fixtures, alterations, installations or additions: (a) Made a part of the building or structure you occupy but do not own; and (b) You acquired or made at your expense but cannot legally remove; (7) Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property of Others.

**c. Personal Property of Others** that is: (1) In your care, custody or control; and (2) Located in or on the building described in the Declarations. . . . However, our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

Goldeagle submitted a claim to Covington under the policy for the damaged lights. Covington denied the claim on the grounds that the damaged lights were a part of the building rather than business personal property and were not installed by Goldeagle as a betterment or improvement. Covington indicated that there was no coverage for the building and directed Goldeagle to Section "A. 1. (b)" of the policy, which is quoted above. Goldeagle then filed its action against Covington for breach of contract and bad faith. Covington moved for summary judgment, arguing that the policy precluded coverage and that its denial was not made in bad faith. Goldeagle

4

filed a cross motion for partial summary judgment on its breach of contract claim. The trial court summarily denied Goldeagle's motion and granted Covington's. This appeal followed, in which Goldeagle argues, in two separate enumerations of error, that the trial court erred in refusing to grant its motion and in granting Covington's motion. We address these errors simultaneously and find that the trial court's judgment is correct.

"At the outset, we note that insurance in Georgia is a matter of contract, and this Court has long held that such contract disputes are well suited for adjudication by summary judgment because construction of a contract is ordinarily a matter of law for the court." *Southern Trust Ins. Co. v. Cravey*, 345 Ga. App. 697, 698 (814 SE2d 802) (2018) (citation and punctuation omitted). When construing a contract,

> we must first decide whether the language is clear and unambiguous. Of course, under Georgia law, an insurance company is free to fix the terms of its policies as it sees fit, so long as they are not contrary to the law, and it may insure against certain risks while excluding others. And as is true with all contracts, unambiguous terms in an insurance policy require no construction, and their plain meaning will be given full effect, regardless of whether they might be of benefit to the insurer, or be of detriment to an insured. Thus, if the language is unambiguous, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. But if a contract is ambiguous, the

5

court must apply the rules of contract construction to resolve the ambiguity. And contractual provisions are ambiguous when they are susceptible to more than one meaning, even if each meaning is logical and reasonable. Indeed, a contract is ambiguous if the words leave the intent of the parties in question—i.e., that intent is uncertain, unclear, or is open to various interpretations.

*Auto-Owners Ins. Co. v. Neisler*, 334 Ga. App. 284, 286-287 (1) (779 SE2d 55) (2015) (punctuation and footnotes omitted).

In order to determine what coverages were provided in an insurance policy, we look first to the Declaration Page of the policy. As we explained in *Simalton v. AIU Ins. Co.*, 284 Ga. App. 152, 154 (1) (643 SE2d 553) (2007),

[t]he Declarations Page represents the means by which an insurer tailors its standard form policy to allow insureds to purchase only the types of coverage, and the amount of such coverage, that they desire. It "is the one part of the policy likely to be read by the insured, and contains the terms most likely to have been requested by the insured." 16 Richard A. Lord, Williston on Contracts, § 49:25 (4th ed.); see also *Zacarias v. Allstate Ins. Co.*, 168 N.J. 590, 775 A2d 1262, 1270 (2001) (Because the declarations page is the "one page most likely to be read and understood by the insured," insurers should "incorporate thereon as much information as may reasonably be included."). For that reason, the form policy must be read together with the Declarations Page to determine

6

exactly which coverages, and in what amounts, an insured has purchased.

*Id*. at 154 (1) (footnote and punctuation omitted). Insurers are allowed "to issue standard form policies, containing multiple coverage provisions, even though not all coverages have been purchased by an insured." *Id.*

Having considered the Declarations Page and the policy provisions at issue, we find that the contract at issue is not ambiguous. The terms of the contract are clear and its provisions, including the Declarations Page and the full policy, are susceptible to one meaning. The intent of the parties can be ascertained from the contract itself.

The only coverage provided under the contract is for Goldeagle's "Business Personal Property" and Goldeagle's argument that the property in issue is insured under the "Building" coverage is contrary to the terms of the contract. Under the section entitled "Coverages Provided" on the Declarations Page, only "Business Personal Property" is listed. The Declarations Page also states "Insurance at the described premises applies only for coverage for which a limit of insurance is shown." On its face, the policy shows that the only limit of insurance shown in the Declarations Page is for Business Personal Property. The "Building and Personal Property Coverage Form" defines "Covered Property" as "the type of property

7

described in this section . . . *if a Limit of Insurance is shown in the Declarations for that type of property*." (Emphasis added). "Covered Property" includes three categories: "Building," "Your Business Personal Property," and "Personal Property of Others." The policy does not show that Goldeagle purchased or paid a premium for building coverage or for coverage for the personal property of others. Thus, to determine the items the policy intended to cover, we look to items that are covered as "Your Business Personal Property."

In its appellate brief, Goldeagle does not articulately set forth the argument that the lights were covered as fixtures under the coverage for "Your Business Personal Property." To be covered under the policy, the lights must be "fixtures . . . (a) Made a part of the building or structure . . . and (b) You acquired or made at your expense." The Court has nonetheless reviewed the coverage for "Your Business Personal Property" and concludes that Goldeagle cannot establish that coverage for the lighting at issue existed.

The removable lights were not made part of the building and do not fit within a common definition of fixtures. Goldeagle explains the lights are not "part of the building" by describing their movable, non-permanent qualities. In addition, while the policy does not define the term "fixtures," "[i]n the context of an insurance policy,

8

absent a definition the court is entitled to use the dictionary to determine the plain and generally accepted meaning of the term." *American National Property & Cas. Co. v. Amerieast, Inc.*, 297 Ga. App. 443, 446-447 (1) (677 SE2d 663) (2009) (citation and punctuation omitted). Fixture is defined as "[a]n article in the nature of personal property which has been so annexed to the realty that it is regarded as a part of the land; [t]hat which is fixed or attached to something permanently as an appendage, and not removable." Black's Law Dictionary 574 (5th Ed. 1979). Webster's dictionary defines fixture as an item of movable property that is fixed or attached as a permanent appendage or as a structural part. See Merriam-Webster Online Dictionary (2019) https://www.merriam-webster.com/dictionary/fixture. Goldeagle's description of the ease with which the lights could be removed and replaced lends to the conclusion that they do not have the qualities of being "not removeable," attached permanently, or regarded as a part of the land. Since the lights were not fixtures made part of the building, they are not "Your Business Personal Property" and, consequently, not covered under Section A.1.b(6).

Even if we concluded the lights were fixtures made part of the building, they are not "Your Business Personal Property" because they were not "acquired or made at [Goldeagle's] expense." Section A.1.b(6) coverage requires fixtures to be both

made part of the building and acquired or made at the insured's expense. It is undisputed the lights here were not installed or purchased by Goldeagle but rather were already in place when Goldeagle moved into the building. *See generally Atlanta Eye Care, Inc. v. Aetna Cas. & Sur. Co.,* 185 Ga. App. 507 (364 SE2d 634) (1988) (insurer not responsible for betterments and improvements not paid for by the tenant); *Tu v. Dongbu Ins. Co.*, 2018 U.S. Dist. LEXIS 151322 (sewer or subfloor installed before the owner acquired the property and therefore not acquired or made at owner's expenses are not covered as improvements or betterments under business personal property). The lights that are the subject of Goldeagle's claim were purchased and installed prior to Goldeagle's tenancy. Thus, we conclude that the lights are not covered as "Your Business Personal Property," which is the only coverage that Goldeagle purchased.

Goldeagle argues in the alternative that if the lights are not fixtures within the meaning of Section A.1.b(6) of the policy, they should be covered as "leased personal property for which you have a contractual responsibility to insure," which is also listed as a category of business personal property. However, this argument also fails because Goldeagle has not established that it had a responsibility to insure the lights.

10

Goldeagle cites to Article IX, Section 9.2 of the lease, entitled "Maintenance by Tenant." That section provides as follows:

> Tenant shall at all times, at Tenant's sole cost and expense, keep the Premises . . . and all partitions, window and window frames and mouldings, glass, store fronts, doors, door openers, fixtures, equipment and appurtenances thereof (including lighting, heating, electrical, plumbing, waterproofing, ventilations and air conditioning fixtures and systems and other mechanical equipment. . . ) in good order, condition and repair and clean. . . .

While this provision requires Goldeagle to keep the lighting in good repair, it does not require Goldeagle to insure the lighting. Section 11.2 of Article XI of the lease agreement pertaining to insurance requires the tenant to insure its "merchandise, trade fixtures, furnishing, wall covering, floor covering, carpeting, drapes, equipment and all items of personal property of Tenant located on or within the Premises." Goldeagle's specific inclusion of "lighting" in the list of items it was required to maintain, while excluding "lighting" from the list of assets it was required to insure under the lease, demonstrates that a duty to maintain is not equivalent to a duty to insue. Thus, Goldeagle has not established that the lights are covered under Section A.1.b of the policy.

11

In sum, the declarations page unambiguously states on its face that Goldeagle obtained insurance coverage from Covington for its business personal property only and Goldeagle has not carried its burden to establish that the lights were covered as business personal property. Accordingly, the trial court did not err when it granted summary judgment to Covington and denied partial summary judgment to Goldeagle.

*Judgment affirmed. Gobeil and Hodges, JJ., concur.*